Peggy Hunt (Utah State Bar No. 6060)
Chris Martinez (Utah State Bar No. 11152)
Jeffrey M. Armington (Utah State Bar No. 14050)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
           martinez.chris@dorsey.com
           armington.jeff@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                        Plaintiff,<br>v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>                        Defendants. | **INTERIM FEE APPLICATION FOR RECEIVER AND RECEIVER'S PROFESSIONALS FOR SERVICES RENDERED FROM JUNE 25, 2012 THROUGH DECEMBER 31, 2012**<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

In accordance with the Order Appointing Receiver and Staying Litigation (the "Receivership Order"),[1] R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of Utah, LC ("National Note" or "NNU"), as well as certain subsidiaries and entities affiliated with National Note, and the assets of Wayne LaMar Palmer ("Palmer"), collectively, the "Receivership Entities" hereby submits this interim "Fee Application", seeking approval by the Court of fees and expenses incurred by the Receiver, the Receiver's forensic

---
[1] Docket No. 9.

accountants, Klein and Associates, PLLC ("Klein and Associates"), and the Receiver's legal counsel, Dorsey & Whitney LLP ("Dorsey"), for the period of June 25, 2012 through December 31, 2012 (the "Application Period") and authorization to pay all authorized fees and expenses from unencumbered funds of the Receivership Estate.  In support thereof, the Receiver states as follows.

## I.   BACKGROUND

1. On June 25, 2012, this case was commenced by the United States Securities and Exchange Commission (the "SEC") against Defendants Palmer and National Note in this Court. The SEC alleges, among other things, that Defendants Palmer and National Note engaged in securities fraud and operated a Ponzi scheme that took over $100 million from more than 600 investors.

2. The SEC filed several *ex parte* motions on June 25, 2012, all of which were granted by the Court.  In particular, the Court entered the Receivership Order, appointing the Receiver and authorizing the Receiver to employ professionals to assist him with his duties.[2]

3. Upon his appointment, and in accordance with the Receivership Order, the Receiver employed the Dorsey as his legal counsel and Klein and Associates as his forensic accountants, and such retention was approved by the Court.[3]  Neither the Receiver nor any of his professionals have entered into an any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

---

[2] Receivership Order, at ¶ 58.

[3] Docket No. 14 (Order Authorizing Receiver to Employ Professionals).

4. During the Application Period, the Receiver and his professionals have provided actual and necessary services for the benefit of the Receivership Estate which are set forth in greater detail below. The Receiver respectfully submits that the fees and expenses requested in the Fee Application are reasonable and should be approved. The Receiver has submitted the Fee Application to the SEC, and it has informed the Receiver that it has no objection to the fees and expenses requested herein.

## II. SERVICES PERFORMED

5. To date, the Receiver has filed the following reports with the Court: *an Initial Report and Liquidation Plan*, which includes a status report for the period of June 25, 2012 through September 30, 2012 (the "First Status Report");[4] a *Second Status Report* for the period of October 1, 2012 through December 31, 2012 (the "Second Status Report");[5] a *Third Status Report* for the period of January 1, 2013 through March 31, 2013;[6] and a *Fourth Status Report* for the period of April 1, 2013 through June 30, 2013 (the "Fourth Status Report").[7] These Status Reports provide a comprehensive description of the services performed by the Receiver and his professionals during the Application Period and are incorporated herein by reference.

6. The efforts of the Receiver and his professionals during the Application Period are detailed in the First Status Report and the Second Status Report, both of which are incorporated herein. In general, however, during the Application Period, the Receiver and his professionals have primarily focused on the following:

---

[4] Docket No. 73.

[5] Docket No. 170.

[6] Docket No. 288.

[7] Docket No. 408.

- Closing and securing NNU's office and all books and records located therein and elsewhere;

- Securing NNU's bank accounts and funds;

- Communicating with NNU's investors;

- Valuing NNU's assets including its accounts receivable, real estate holdings, and mineral holdings;

- Developing a liquidation plan;

- Continuing operations of the Receivership Estate, where continuation of those operations maximized the value of the estate;

- Valuing real property of the Receivership Estate and entering into sale agreements;

- Filing motions with the Court to sell five Receivership Estate properties;

- Selling personal property of the Receivership Estate;

- Evaluating pre-Receivership asset transfers;

- Responding to complaints in intervention;

- Commencing an action against a former employee of one of the Receivership Entities to recover property wrongfully taken;

- Engaging in settlement negotiations with numerous parties related to claims by or against the Receivership Estate;

- Evaluating the propriety of numerous transactions; and

- Assessing the financial condition of the Receivership Entities.

7. As of August 30, 2013, the Receiver has recovered more than $4 million for the benefit of the Receivership Estate. As discussed in greater detail below, the Receiver has segregated and reserved certain real property sale proceeds pending resolution of disputes related

to the validity and enforceability of Assignments of Beneficial Interest ("ABIs") recorded against certain of the Receivership Estate's real properties.

### III.    BANK ACCOUNTS OF THE RECEIVERSHIP ESTATE

8.    The Receivership Estate currently has two bank accounts, designated as an "Operating Account" and a "Real Estate Account".[8]  The Operating Account holds funds that are free and clear of any interests, and as of August 30, 2013, this Account had a balance in the total amount of $885,996.92.  The Real Estate Account holds funds that have been obtained from the liquidation of real property against which ABIs have been recorded, and as of August 30, 2013, this Account had a balance in the total amount of $3,135,606.27.  Until ABIs are released or disputes related to the ABIs are resolved, funds in the Real Estate Account will be held by the Receiver.

9.    If the Court approves this Fee Application, the Receiver would pay the approved fees and expenses from the Operating Account.  Given the amount requested, which totals $465,087.01, the Operating Account has sufficient funds to pay these fees and expenses.

10.    Given the amount on deposit in the Operating Account, the Receiver has determined that it would be prudent to delay payment of other fees and expenses incurred by he and his professionals commencing in January, 2013 to the present.  The amount of these fees and expenses are disclosed on an ongoing basis, with the most recent being set forth in the Fourth Status Report.[9]

---

[8] *See* Fourth Status Report, at pp. 40-42.

[9] *Id.,* at p. 42.

## IV.     REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES

11.     The Receivership Order provides, in relevant part, that:

> 59.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.
>
> 60.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications")  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.
>
> 61.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. . . .
>
> 62.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. . . .[10]

12.     The Receiver now respectfully requests that the Court enter an Order approving on an interim basis and authorizing payment from the Receivership Estate of the reasonable compensation and expenses outlined herein for the Application Period of June 25, 2012 through December 31, 2012.  The total amount requested for the Receiver and his professionals is in the amount of $465,087.01, which is based on the following:

---

[10] Receivership Order ¶¶ 59-62.

|  | **RECEIVER AND KLEIN AND ASSOCIATES** | **DORSEY** |
|---|---|---|
| Fees | $320,914.50 | $103,730.75 |
| Expenses | $38,841.94 | $1,599.82 |
| **TOTAL** | $359,756.44[11] | $105,330.57[12] |

13. The amounts requested include voluntary reductions made by the respective professionals in an exercise of their billing judgment. Dorsey has a courtesy discount in the amount of $431.25. The Receiver and the staff of Klein & Associates spent 347.5 hours during this time period which are not being billed. At ordinary rates, this time would be valued at $43,882.50.

14. The largest share of the expense reimbursement request by the Receiver consists of funds he advanced to the Receivership to cover operating expenses before sufficient funds had been recovered to allow operating expenses to be paid from funds recovered. These funds included $28,100.00 in operating funds deposited into receivership bank accounts and $10,741.94 in operating expenses paid directly by the Receiver from his own funds.

15. This Fee Application is supported by the following documents. **Exhibit A** contains a summary of the fees and expenses incurred for each of the billing matters. Detailed invoices with minimal redaction to preserve privilege, which describe the work performed by the

---

[11] This amount differs slightly from the amounts listed in the First and Second Status Reports. The total amount requested is smaller by $7.50 and the number of hours is smaller by .2 hours. These changes reflect correction of errors during final review.

[12] This amount differs slightly from the combined amounts listed in the First Status Report and Second Status Report, which totaled $105,196.82. The difference of $133.75 reflects the fact that Dorsey's invoices as of the filing of the First Status Report and Second Status Report had not been finalized.

Receiver and Dorsey on a daily basis were provided to the SEC and are attached hereto as **Exhibit B**.  Summaries of the expenses incurred are attached as **Exhibit C.**

16.     The fees and expenses requested comply with the SEC's Billing Instructions, and in compliance with ¶ 60 of the Receivership Order, the Receiver has submitted the Fee Application together with all exhibits and relevant billing information to the SEC.  The SEC has informed the Receiver that it has no objection to the Fee Application.

17.     The Receiver has not filed Quarterly Fee Applications as authorized under ¶ 60 of the Receivership Order quoted above because he felt it was necessary to first increase the amount on deposit in the Operating Account from which such fees and expenses will be paid.  However, accruing fees and expenses have been disclosed to the Court and interested parties, including the SEC, in each of the four Status Reports discussed above.

18.     The Receiver respectfully submits that a holdback of fees is not appropriate in this case because the Receiver and his professionals have deferred and will continue to defer payment of significant amounts of their actual and necessary fees and expenses until there are sufficient funds in the Operating Account, even after the payment of the fees and expenses requested herein, to make payment.

19.     The Receiver and his professionals understand that the authorization and payment of fees and expenses is interim in nature and that they will be required to file a final fee application at the close of case.

## V. CONCLUSION

20. The Receiver respectfully submits this Fee Application and requests that the Court enter an Order approving the actual and necessary fees and expenses incurred on behalf of and for the benefit of the Receivership Estate.

21. A proposed Order is attached hereto as **Exhibit D**.

The Receiver, Klein and Associates, and Dorsey verify under penalty of perjury that the foregoing is true and correct.

DATED this 9th day of October, 2013.

_____
WAYNE KLEIN, Receiver

KLEIN AND ASSOCIATES PLLC

_____
WAYNE KLEIN, Principal

DORSEY & WHITNEY LLP

_____
Peggy Hunt
*Attorneys for R. Wayne Klein, Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that the above **INTERIM FEE APPLICATION FOR RECEIVER AND RECEIVER'S PROFESSIONALS FOR SERVICES RENDERED FROM JUNE 25, 2012 THROUGH DECEMBER 31, 2012** was filed with the Court on this 9th day of October, 2013, and served via ECF on all parties who have requested notice in this case.

                                                    */s/ Jeffrey M. Armington*