Peggy Hunt (Utah State Bar No. 6060)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>Defendants. | **FOURTEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER**<br>*For the Quarter Ending December 31, 2015*<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of Utah, LC ("National Note"), as well as certain subsidiaries and entities affiliated with National Note ("Related Entities"), and the assets of Wayne LaMar Palmer ("Palmer"), collectively, the "Receivership Entities" hereby submits this Fourteenth Status Report for the period October 1, 2015 through December 31, 2015 (the "Reporting Period").

# TABLE OF CONTENTS

Page

I. PROCEDURAL HISTORY ..................................................................................................1

II. CONTINUED OPERATIONS.............................................................................................1

III. TRIAL AGAINST PALMER AND NATIONAL NOTE IN THE CIVIL CASE ..................2

IV. REAL ESTATE TRANSACTIONS .....................................................................................3

    A.     Real Properties Sold During the Reporting Period. ................................................ 3
    B.     Motions Filed Seeking Approval of Property Sales ......... .................................. 3
    C.     Offers Preliminarily Acceptted on Real Estate, Offers Withdrawn ..................... 5

V. REAL ESTATE LIENS .......................................................................................................6

    A.     Assignments of Beneficial Interest ("ABIs). ......................................................... 6
    B.     Deeds of Trust ............................................................................................................ 7

VI. LITIGATION AND SETTLEMENTS ................................................................................8

    A.     Lawsuits Resolved During Reporting Period ........................................................ 9
    B.     Pending Lawsuits ..................................................................................................... 9
    C.     Settlement of Litigation .......................................................................................... 11

VII. CLAIMS PROCESS .......................................................................................................12

    A.     Claims Received ...................................................................................................12
    B.     Claim Review ........................................................................................................12
    C.     Next Steps..............................................................................................................13

VIII. FINANCIAL ANALYSIS ..............................................................................................14

    A.     Receivership Financial Information...................................................................... 14

IX.. NEXT STEPS ...................................................................................................................16

  IX. CONCLUSION...............................................................................................................17

# I.

## PROCEDURAL HISTORY

This action (the "Civil Case") was commenced by the United States Securities and

Exchange Commission (the "SEC") on June 25, 2012 against Defendants Palmer and National

Note by the filing of a Complaint in the United States District Court for the District of Utah (the

"Court").[1]  The Court held a trial on November 2, 2015 and entered judgment against Palmer and

National Note in favor of the SEC on November 30, 2015 (discussed below).

On August 19, 2015, a grand jury criminal indictment was issued for Palmer and his

cousin, Julieann Palmer Martin.  They are charged with wire fraud, mail fraud, and money

laundering.  The criminal case is pending.

This is the Fourteenth Status Report for the period of October 1, 2015 through December

31, 2015, defined above as the "Reporting Period."  Earlier status reports are available on the

Receiver's website at http://www.kleinutah.com/index.php/receiverships/national-note-of-utah-

lc.

# II.

## CONTINUED OPERATIONS

The Receiver is no longer operating any businesses or rental properties of the

Receivership Estate. With the sale of the Ogden Office Building on January 6, 2016 (shortly

after the close of the Reporting Period), the Receivership Estate no longer has any properties

incurring ongoing operating expenses.

---

[1] Docket No. 1.

## III.

## TRIAL AGAINST PALMER AND NATIONAL NOTE IN THE CIVIL CASE

The SEC's Civil Case against Palmer and National Note was tried to the Court on November 2, 2015.  Palmer elected not to participate in the trial and no counsel represented Palmer or National Note at the trial.  The Court heard testimony of witnesses called by the SEC, received numerous documentary exhibits, and heard oral argument from the SEC.

On November 30, 2015, the Court entered Findings of Fact and Conclusions of Law,[2] concluding as follows:

- The promissory notes issued by Palmer and National Note were securities that were not registered;

- Investor funds were sent to an account at Chase Bank, then wired to an account at Wells Fargo Bank, where the funds were used to pay returns to other investors;

- National Note has been insolvent since at least 2009;

- Palmer misrepresented to investors the safety of their investments with National Note, how their funds were being used, the solvency of National Note, and the true value of real estate owned by National Note;

- The amount National Note owed to investors as of June 2012 was $51.9 million;

- Palmer misappropriated $1.4 million from investors for his own personal gain;

- Palmer violated the federal securities laws by a) making untrue statements and omitting material facts, intending to deceive investors, b) selling unregistered securities, and c) acting as a broker-dealer without being registered;

---

[2] Docket No. 1043.

- National Note operated as a Ponzi scheme;

- Palmer's violations were repeated and egregious; and

- Palmer was ordered to cease violating securities laws and to disgorge $1,767,287.10, as well as pay $1,050,000.00 in civil penalties.

## IV.

## REAL ESTATE TRANSACTIONS

Attached hereto as **Exhibit A** is a chart setting forth the status of all real properties in the Receivership Estate as of December 31, 2015.

A.  **Real Properties Sold During the Reporting Period**. No property sales were closed during the Reporting Period.

B.  **Motions Filed Seeking Approval of Property Sales**. The Receiver filed three motions during the Reporting Period seeking Court approval to sell eight properties of the Receivership Estate:

1.  Ogden Office Building.  On November 19, 2015, the Receiver filed an *Amended Motion and Memorandum in Support Requesting Order Approving (1) Public Sale of Property Free and Clear of Interests, (2) Method and Form of Publication Notice, (3) Public Auction Procedures, and (4) Settlement Agreement With Co-Owner*,[3] seeking approval (a) to sell this commercial office building located at 2351 Grant Street in Ogden, Utah at a public sale to the stalking horse bidder who offered $600,000.00 or to a higher and better offeror, and (b) of settlement agreement with the 50.2% owner of the property. No higher and better offers were submitted for the property and, thus, the auction was canceled and the property was sold to the

---

[3] Docket No. 1040.

stalking horse bidder. The sale closed on January 6, 2016, after the conclusion of the Reporting Period. The results of the sale will be discussed in the next Status Report.

        2.     <u>Almond Heights Lots 19 and 20</u>. On December 15, 2015, the Receiver filed a Motion seeking approval to sell two lots in the Almond Heights subdivision located in Toquerville, Utah for a total of $33,600.00.[4] The Court approved publication of notice of the proposed sales,[5] and has set a hearing for January 15, 2016 to determine whether to approve the sales. These two lots, along with four others in the subdivision, are subject to a $30,000.00 deed of trust. The Receiver intends to pay off the deed of trust at closing.

        3.     <u>Five Lots in Toquerville, Utah</u>. On December 31, 2015, the Receiver filed a Motion seeking approval to sell five residential building lots in Toquerville, Utah for $151,335.00 (Lots A-14, A-15, A-18, C-2, and F-3).[6] Three of these properties (Lots A-14, A-15, and A-18) are currently subject to deeds of trust, one of which will be paid off at the closing of the sale of Almond Heights Lots 19 and 20.  For the other two deeds of trust, the Receiver will pay 75% of the net sales proceeds to the trust deed holder, pursuant to a Court-approved settlement agreement with that trust deed holder. Two of these lots are also encumbered by power poles and overhead telecommunications wires that would prevent construction of homes on the lots. The Receiver has been working with the utility providers to relocate and bury the utility lines. That work is expected to be completed in early February. The Court approved

---

[4] Docket No. 1048.

[5] Docket No. 1051.

[6] Docket No. 1057.

publication of notice of the proposed sales,[7] and has set a hearing on the Motion to approve the sales for February 8, 2015.

        **C.**    **Offers Preliminarily Accepted on Real Estate, Offers Withdrawn**. The Receiver has accepted offers to purchase five other properties of the Receivership Estate during the Reporting Period, all of which are conditioned on buyer due diligence. Motions seeking approval to sell these properties will be filed if the buyers elect to proceed after completing due diligence.

        1.    <u>Toquerville Lot A-2</u>. On September 29, 2015, the Receiver accepted, subject to Court approval, an offer to purchase a five-acre lot in Toquerville, Utah, for $148,200.00. The buyer is conducting due diligence regarding the property and its potential to be subdivided. The due diligence deadline is January 12, 2016. At that time, the Receiver hopes to file a Motion seeking approval of the sale.

        2.    <u>Expressway Business Park</u>. On December 1, 2015, the Receiver accepted, subject to Court approval, offers to purchase a 2.5-acre parcel of platted warehouse condominium pads for $162,500.00 and a 4.5-acre portion of an adjacent parcel of land for $250,000.00 at Expressway Business Park. On December 23, 2015, the buyer withdrew his offers after conducting due diligence.

        3.    <u>Byron, Minnesota Industrial Park Lots 4 and 5</u>. On December 29, 2015, the Receiver accepted an offer to purchase, subject to Court approval, two industrial lots located at the industrial park in Byron, Minnesota for a total sale price of $448,000.00. The purchase

---

[7] Docket No. 1062.

agreement is subject to the buyer obtaining financing and approval by municipal authorities for the buyer's proposed building plans. If these conditions are satisfied, the Receiver will file a Motion seeking approval of the sale.  This property has significant unpaid property taxes owed.

## V.

## REAL ESTATE LIENS

A.   **Assignments of Beneficial Interest ("ABIs")**. At the time the Receiver was appointed, 349 ABIs with face amounts of $32.4 million had been recorded against 49 properties in the Receivership Estate. The Receiver maintains that these ABIs are invalid as a matter of law, and has worked to obtain the voluntary release of the ABIs.  For those persons who would not voluntarily release the ABIs, he has commenced a lawsuit, seeking a judgment declaring the ABIs to be invalid (the "ABI Action").[8]  As of the end of the Reporting Period, as a result of the Receiver's efforts, only eight ABIs (with face amounts of $810,859.40) remain against three properties (Elkhorn Lot 11, Expressway Business Park, and Farrell Business Park). Action has been taken as to each of these remaining ABIs as follows:  Motions for Summary Judgment against holders of five of these ABIs have been filed; motions seeking the entry of default judgments against two ABI holders have been filed; and the Receiver has requested that the Complaint in the ABI Action be amended to include ABI holder Terry Stallman as a defendant.[9]

---

[8] *Klein v. Adams*, Civ. No. 2:14CV614-BSJ (D. Utah).

[9] Mr. Stallman was sued by the Receiver on June 6, 2013 to recover false profits and to declare his ABI invalid. *Klein v. Stallman*, Civ. No. 2:13CV409-DN (D. Utah). The Receiver obtained judgment against Mr. Stallman on December 7, 2015 as to the Claims for Relief related to his false profits. The Claims for Relief related to his ABI were dismissed without prejudice and the Receiver has sought to add Mr. Stallman as a defendant in the ABI Action.

    **B.**    <u>**Deeds of Trust**</u>. The Receiver identified 13 properties of the Receivership Estate on which deeds of trust had been recorded at the time of his appointment. Ten of those deeds of trust have been paid off or released, or the properties secured by them were abandoned. Progress is being made on the deeds of trust still recorded against the remaining three properties: Overland Trails, Almond Heights, and Expressway Business Park.

    1.    <u>Overland Trails (Eagle Mountain, Utah)</u>: There are seven recorded deeds of trust for a total of $252,136.91—which is more than the value of the property. During the Reporting Period, two of these trust deeds were assigned to the Receiver, joining another trust deed assigned earlier. A fourth trust deed is held by an investor who received distributions greater than the amount of his investment, so the Receiver believes that trust deed can be voided. With these releases, the Receiver believes the property now has sufficient equity to justify marketing the property for sale.

    2.    <u>Almond Heights Subdivision (Toquerville, Utah)</u>. There are three holders of deeds of trust on the building lots in this Subdivision: Robert Stensland; Kristine Olson Profit Sharing Plan; and Real Estate Investment Partners Profit Sharing Plan. If the sales of Almond Heights Lots pending before the Court are approved and close, there will be no deeds of trust left to encumber the remaining Almond Heights lots.  Specifically, Mr. Stensland's deeds of trust will be satisfied upon the approval and sale of Lots 14 and 15 (*see* Part IV.B, above); and the Kristine Olson Profit Sharing Plan's deed of trust deed will be satisfied upon the approval and sale of Lots 19 and 20 (*see* Part IV.B, above).  Furthermore, the Real Estate Investment Partners

Profit Sharing Plan's deeds of trust apply to Lots 23 to 26, which Lots have been sold.[10] The Receiver is holding $103,385.86 in net proceeds from the sale of those Lots in the Real Estate Account pending resolution of disputes as to the extent of the Plan's interest in the funds. Specifically, the face value of the Plan's deed of trust is $158,655.62, but the Receiver asserts that only a portion of the net sale proceeds should be paid to the Plan inasmuch as the Plan only invested $68,000 at the time the deed of trust was given and the person in control of the Plan received commissions from National Note. The Receiver is attempting to work out an agreement with the lienholder.

      3.    <u>Expressway Business Park (Spanish Fork, Utah)</u>. There are four deeds of trust recorded against this property in favor of Westar Equities, two tenants of the property, and Summit Exchange. At this time, Westar Equities is owed $5,992.83, and it contends that interest in the amount of $3,639.51 is also owed. The two tenants' interests are in unspecified amounts, and the Receiver believes that they relate to tenant improvements that were promised by National Note but never completed. The Receiver is attempting to have Summit Exchange release its deed of trust because he believes the debt to that entity has been paid.

**VI.**

**LITIGATION AND SETTLEMENTS**

The Receiver filed approximately 140 lawsuits to recover transfers made by National Note and its affiliated entities. The Receiver's investigation is ongoing and one additional lawsuit may be filed. During the Reporting Period, two of these pending lawsuits were

---

[10] *See* Docket Nos. 829, 951, and 998.

concluded, leaving eight clawback lawsuits remaining.

**A.**   **Lawsuits Resolved During Reporting Period**.  During the Reporting Period, the Receiver obtained judgment in two of the clawback lawsuits. On November 19, 2015, judgment was entered against Joe and Catherine Lovato on the amount of $45,558.57.[11] On December 7, 2015, judgment was entered against Terry Stallman in the amount of $13,316.28.[12] As noted above in Part V.A, the Receiver intends to seek to include Stallman in the Receiver's existing litigation seeking invalidation of ABIs.

**B.**   **Pending Lawsuits**. The status of the eight clawback cases still pending is summarized below:

1.   Victor Wagner and Related Entities.[13]  An Order to Show Cause requiring Mr. Wagner to respond to discovery was entered.  On the eve of the response date, the Receiver was served with a suggestion of bankruptcy from Mr. Wagner.  The Receiver understands that Mr. Wagner has filed bankruptcy, but this does not apply to his related entities.  The Receiver is evaluating this recent development.

2.   Michelle Turpin Michelle Turpin & Associates.[14] Cross Motions for Summary Judgment have been filed in this case, and oral argument has been scheduled for March 15, 2016.

---

[11] *Klein v. Lovato*, Civ. No. 2:13CV506 (D. Utah) (Kimball,J.).

[12] *Klein v. Stallman*, Civ. No. 2:13CV409 (D. Utah) (Nuffer, C. J.).  The Court has also entered an Order dismissing the Receiver's Claims for Relief related to Mr. Stallman's ABI holdings without prejudice, and the Receiver has requested that the Complaint in the ABI Action be amended to include Mr. Stallman as a defendant. *See supra* Part V.A.

[13] *Klein v. Wagner et al.,* Civ. No. 2:13CV557 (D. Utah) (Shelby, J.).

[14] *Klein v. Turpin et al.,* Civ. No. 2:14CV302 (D. Utah) (Wells, M.J.).

3.    <u>Christy Palmer</u>.[15] Mrs. Palmer filed a petition seeking relief under Chapter 13 of the Bankruptcy Code on November 4, 2015, and this case converted to Chapter 7 on December 10, 2015. This is Mrs. Palmer's second bankruptcy case – her first case was dismissed when she failed to appear at her meeting of creditors.  As a result of the bankruptcy filing, the case against Mrs. Palmer to recover fraudulent transfers she received has been stayed. The Receiver will file a claim in the bankruptcy case, and will monitor the case to determine the best course of action.

4.    <u>Kleen Water Power</u>.[16] On September 9, 2015, an Order was entered adding Carlton Gentry, the president of the company, as a defendant. The Receiver is in the process of obtaining service of process on Gentry, a Canadian citizen.

5.    <u>Max Andreason and Related Parties</u>.[17] On November 17, 2015, summary judgment was entered against defendant M&M Andreason Investments, Inc. for $50,051.22. The Receiver was also recently granted leave to amend his Complaint to name Melanie Andreason as a defendant based on evidence Mrs. Andreason is a transferee of false profits.

6.    <u>Joel Blakeslee and Related Parties</u>.[18] Summary judgment has been entered against the Blakeslee Family Living Trust.  Since that time, the Receiver has taken the deposition of Joel Blakeslee and has visited properties he owns. The Receiver and Mr. Blakeslee are in settlement discussions. If a settlement agreement is not reached, the Receiver expects to seek

---

[15] *Klein v. Palmer*, Civ. No. 2:13CV581 (D. Utah) (Wells, M.J.).

[16] *Klein v. Kleen Water Power*, Civ. No. 2:13CV550 (D. Utah) (Furse, M.J.).

[17] *Klein v. Andreason et al.*, Civ. No. 2:13CV462 (D. Utah) (Nuffer, C.J.).

[18] *Klein v. Blakeslee et al.*, Civ. No. 2:13CV405 (D. Utah) (Campbell, J.).

summary judgment against Mr. Blakeslee.

      7.      Fred Myer.[19] A tentative settlement with Myer was rejected by the Court. The dispute with Myer revolves around who has the right to claim ownership of an account balance that was transferred from Myer to a third party. The third party has filed a claim against the Receivership Estate, and thus it appears that issues related to the claim will be handled through the claim process.

      8.      Secure American Gold Exchange ("SAGE").[20] A tentative settlement agreement with SAGE was denied by the Court based on uncertainty as to whether the judgment to be assigned to the Receiver as part of the settlement has value. The Receiver will investigate the likely collectability of this judgment and decide whether to resubmit the settlement agreement for approval.

      **C.**      **Settlement of Litigation.**

      1.      Fifteenth Motion to Approve Settlements. On October 19, 2015, the Receiver filed his *Fifteenth Motion Seeking Approval of Settlement Agreements and Memorandum in Support*,[21] seeking approval of two settlement agreements with Myer and SAGE (described in Part VI.C). At a hearing on November 17, 2015, the Court denied the Motion and instructed the Receiver to reevaluate the proposed settlement agreements.

      2.      Katy Athay. On November 20, 2015, the Court approved a settlement agreement with Katy Athay, the co-owner of the Ogden Office Building. This agreement

---

[19] *Klein v. Myer*, Civ. No. 2:13CV504 (D. Utah) (Nuffer, C.J.).

[20] *Klein v. Secure American Gold Exchange*, Civ. No. 2:14CV869 (D. Utah) (Wells, M.J.).

[21] Docket No. 1017.

resolved issues related to the sale of the Building and Ms. Athay's claims against the Receivership Estate.  Under the agreement, Ms. Athay agreed to the sale of the Building, to the amount of her share of the net sale proceeds and to waive her claims against the Receivership Estate.

## VII.

## CLAIMS PROCESS

On September 1, 2015, the Court entered an *Order Granting Receiver's Amended Motion Seeking Approval of Proposed Claim Procedures and Accompanying Forms and Setting Bar Date*.[22]  The bar date to file proofs of claim was November 3, 2015. The following summarizes the progress of the claims process as of December 31, 2015. More information about the claims process will be included in a report that will be filed with the Court when the claim review process is completed:

A.     **Claims Received**. A total of 464 claims have been received by the Receiver. Each claimant was assigned a claim number and the claim number, along with confirmation of receipt of each claim, was sent to each claimant. These 464 claims assert claims in a total amount of $66,605,324.61.

B.     **Claim Review**. The Receiver completed his initial review of claims shortly before the end of the year. Letters have been sent to each claimant stating the Receiver's intent to recommend (i) allowance of the claim as asserted, (ii) allowance at a lesser amount than asserted, or (iii) disallowance of the claim in its entirety.  As of December 31, 2015, the Receiver had

---

[22] Docket No. 999.

notified claimants of the following recommendations, which is subject to modification as further information is reviewed:

| Category | # of Claims | Amount of Claims |
|---|---|---|
| Recommended Allowed Claims | 133 | $13,354,795.26 |
| Recommended Allowed Claims in Reduced Amounts | 287 | $47,290,572.39 |
| Recommended Disallowed Claims | 44 | $5,959,956.96 |
| **Total Recommended Amount** | **464** | **$66,605,324.61** |

For the 287 claims where the Receiver indicated his intent to recommend allowance of an amount less than asserted and the 44 where he has indicated an intent to recommend disallowance, the claimants were invited to (i) accept the Receiver's recommendation, or (ii) to provide the Receiver with additional information in support of their asserted claims. This process is ongoing, but as of the end of the Reporting Period, 161 of the claimants had accepted the Receiver's recommendation, and others have sent information to the Receiver regarding their claims. The Receiver is in the process of reviewing this new information.

C.     **Next Steps**. Subject to the Court's oversight, the next steps in the claims process are expected to be as follows: (i) the Receiver will submit a report to the Court with a summary of the claims received and his recommendations as to allowance or disallowance; (ii) the Receiver will file a Motion asking the Court to set a deadline for claimants to file to object to the Receiver's recommendation; (iii) the Receiver will file a response to the objections; (iv)  the Court will set trial dates on each objection that is not resolved; (v) after the conclusion of all the trials, the Receiver will file a final claims report with the Court listing all claims as allowed by the Court and requesting that the Court enter an order approving the same; (vi) the SEC (or possibly the Receiver) will file a motion with the Court recommending a distribution methodology to be used for funds that the Receiver has recovered, which will provide claimants

holding allowed claims an opportunity to object; and (vii) the Court will consider the proposed

plan and consider any objections that are filed.   Once the Court enters an order approving a

proposed plan of distribution, the Receiver will commence making distributions in accordance

with the approved plan.

## VIII.

## FINANCIAL ANALYSIS

**A.**     **Receivership Financial Information**.  The following financial information is

provided for the Reporting Period:

1.     Bank Accounts.  The Receiver maintains two bank accounts for the

operation of the Receivership Estate: a general operating account (the "Operating Account") and

an account holding the net proceeds of real estate sales to which disputed interests have attached

(the "Real Estate Account").  The balances in these accounts as of the close of the Reporting

Period are as follows:

| Account | Account Balance |
|---|---|
| Operating Account[23] | $4,402,519.38 |
| Real Estate Account | $1,085,572.91 |
| **TOTAL** | **$5,488,092.29** |

2.     Operating Account Deposits.  The sources of funds deposited into the

Operating Account during the Reporting Period are shown in the following table:

---

[23] Pursuant to the Court's *Order Approving the Receiver's Third Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from July 1, 2013 through December 31, 2013*, Docket No. 828, the Receiver has established a separate Savings Account tied to the Operating Account in which he is holding 20% of the professional fees incurred by him and his counsel related to that fee application.  Money to open this Savings Account was transferred from the Operating Account. This Savings Account has a current balance of $122,848.27, and is in addition to the amounts reported above.

| Source | Amount In |
|---|---|
| Settlement Agreement proceeds | $115,462.22 |
| Real estate sales proceeds | $0.00 |
| Interest, witness fees | $834.85 |
| **TOTAL** | **$116,297.07** |

3.   <u>Operating Account Expenditures</u>.  The following table shows the categories of operating expenses that have been paid from the Operating Account during the Reporting Period:

| Type of Expense | Amount Out |
|---|---|
| Utilities, property insurance | $3,304.41 |
| Real estate publication, property taxes | $1,127.88 |
| Storage unit | $1,287.00 |
| Tax preparation (Berkeley Research) | $3,780.66 |
| Miscellaneous operating expenses | $128.91 |
| **TOTAL** | **$9,628.86** |

4.   <u>Real Estate Account Deposits and Withdrawals</u>.  No properties were sold during the Reporting Period and no deposits or withdrawals were made from the Real Estate Account during the Reporting Period.  Interest in the amount of $151.86 was added to the account during the quarter.

5.   <u>SFAR</u>.  Attached as **Exhibit B** is a copy of the Standardized Fund Accounting Report for the Reporting Period.

<u>Administrative Expenses</u>.  On November 12, 2015, the Court entered an *Order Approving the Receiver's Fifth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from January 1, 2015 through June 30, 2015*.[24]  On November 12, 2015, $125,790.50 was paid to Klein & Associates for work of the Receiver and

---

[24] Docket No. 1035.

his staff during this six-month period, and $268,418.76 was paid to Dorsey & Whitney LLP for its fees and expenses.

On December 21, 2015, the Receiver filed *Receiver's Sixth Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from July 1, 2015 through September 30, 2015*,[25] seeking authorization of fees and expenses of the Receive and his professionals.  A hearing on this Fee Application is scheduled for February 25, 2016.

For the current Reporting Period, the Receiver and his staff have spent a total of 717.2 hours on behalf of the Receivership Estate.  Total fees incurred by the Receiver during the Reporting Period are in the total amount of $89,817.50.  Dorsey & Whitney LLP's total fees and expenses incurred during the Reporting Period, prior to voluntary reductions that will be taken when a fee application is filed, are in the total amount of $128,527.79.[26]

## IX.

## NEXT STEPS

At this time, the Receiver anticipates addressing the following priorities in the coming months:

1.    Claims Process.  As discussed above, during the Reporting Period, the claims deadline passed and the Receiver informed claimants of his initial recommendations as to the allowance or disallowance of claims submitted.  The Receiver is currently finalizing his

---

[25] Docket No. 1055.

[26] A summary of fees and expenses that have been incurred on behalf of the Receivership Estate by the Receiver and the Receiver's legal counsel in prior Reporting Periods is set forth in each of the earlier Status Reports and the interim Fee Applications.

analysis of claims.  By February, the Receiver expects to complete his review of information submitted by claimants and file his report and recommendations to the Court.

       2.    <u>Litigation</u>.  As discussed in Part V above, the Receiver anticipates continuation of litigation of the ABI Action, seeking to invalidate eight remaining ABIs, as well as litigation of several remaining ancillary proceedings to recover property of the Receivership Estate.  The Receiver expects to file one additional lawsuit against a potential defendant with whom he has entered tolling agreements if a settlement agreement is not reached.

       3.    <u>Collection of Judgments</u>. The Receiver anticipates continuing his efforts to execute on judgments that he has obtained.

       4.    <u>Property Sales</u>.  The Receiver will continue his efforts to sell additional real estate properties in the Receivership Estate.  Based on offers already received, the Receiver expects to sell at additional properties during the next Reporting Period.  It is anticipated that the sale of some of the remaining properties, especially those with environmental problems, will take additional time.

**X.**

**CONCLUSION**

Solid progress was made during the Reporting Period.  The Receiver looks forward to completing the claims process so that a plan of distribution may be recommended to the Court and distributions can be made to investors holding allowed claims.

DATED this _25_th day of January, 2015.

_Wayne Klein_____
WAYNE KLEIN, Receiver

17

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the above **FOURTEENTH STATUS**

**REPORT OF R. WAYNE KLEIN, RECEIVER** was filed with the Court on this ___th day of

January, 2015, and served via ECF on all parties who have requested notice in this case.  A copy

was also served on Wayne Palmer by U.S. Mail, postage prepaid at:

Wayne Palmer
8816 South 2240 West
West Jordan, UT 84088

/s/ Candy Long_____

# EXHIBIT A

## REAL PROPERTIES--STATUS

As of 12/31/15.  Investigation Ongoing.  All Information Subject to Change.

The numbers in the first column correspond with numbers of these properties as described in the Receiver's First Status Report.

| | Property Name | Location | Listing Price | Sales Price | Net Sale Proceeds | Status |
|---|---|---|---|---|---|---|
| | **PROPERTIES CURRENTLY IN RECEIVERSHIP ESTATE** | | | | | |
| 3 | Elkhorn Ridge Estates-42 Building Lots | Malad, ID | | | | Marketed for sale with broker; several lots sold (described below) |
| 4 | Elkhorn Ridge-4 Undeveloped Parcels | Malad, ID | | | | Property split approved [Docket No. 289]  Listed for sale with broker |
| 7 | Ogden Office Building | Ogden, UT | 699,000 | 600,000 | | Sale approved via auction [Docket No. 1042].  Sale closing pending |
| 10 | Deer Meadows | Duchesne Co., UT | 72,000 | | | Marketed for sale through broker; lien released in settlement |
| 20 | Overland Trails | Eagle Mtn., UT | | | | Some trust deeds released; poperty being evaluated for equity |
| 21 | Cedar Fort Land (Fairfield)-85 Acres | Fairfield, UT | 255,000 | | | Property is being marketed through broker |
| 23 | Expressway Business Park-Land | Spanish Fork, UT | 1,250,000 | | | Second buyer withdrew preliminary offer following due diligence |
| | 4.5 acres | | | | | Offer accepted 12/1/15; buyer withdrew offer 12/23/15 |
| | Condo pad | | | | | Offer accepted 12/1/15; buyer withdrew offer 12/23/15 |
| 25 | Almond Heights-10 Building Lots | Toquerville, UT | 842,000 | | | |
| | Lot #A-2 | | 159,750 | 148,200 | | Offer accepted 9/29/15; awaiting due diligence review. |
| | Lot #C-2 | | 34,200 | 30,780 | | Motion for sale filed December 31, 2015 [Docket No. 1057] |
| | Lot #F-3 | | 35,150 | 31,635 | | Motion for sale filed December 31, 2015 [Docket No. 1057] |
| | Lot #14 | | 35,150 | 31,635 | | Motion for sale filed December 31, 2015 [Docket No. 1057] |
| | Lot #15 | | 33,250 | 29,925 | | Motion for sale filed December 31, 2015 [Docket No. 1057] |
| | Lot #18 | | 30,400 | 27,360 | | Motion for sale filed December 31, 2015 [Docket No. 1057] |
| | Lot #19 | | 22,800 | 18,600 | | Motion for sale filed December 15, 2015 [Docket No. 1048] |
| | Lot #20 | | 22,800 | 18,600 | | Motion for sale filed December 15, 2015 [Docket No. 1048] |
| 29 | Bear Grove Industrial Park-4 Lots | Byron, MN | 1,675,200 | | | Property is listed for sale with broker; property encumbered by bond |
| | Lots 4-5, Block 2 | | 448,300 | 448,300 | | Offer accepted 12/29/15; awaiting waiver of contingencies |
| | **PROPERTIES SOLD OR RELEASED** | | | | | |
| | **Property Name** | **Location** | **Listing Price** | **Sales Price** | **Net Sale Proceeds** | **Status** |
| 1 | River Run/Riverbend Subdivision-Land | Middleton, ID | N.A. | N.A. | N.A. | No equity.  Court approved release of property to lender [Dkt. No. 590] |
| 2 | Single family home: 1st Avenue | Middleton, ID | 115,000 | 105,000 | 102,461.72 | Sale approved [Docket No. 734].  Sale closed 10/15/14 |
| | Single family home: Hawthorne Ave. | Middleton, ID | 80,000 | 76,000 | 69,569.48 | Sale approved [Docket No. 804].  Sale closed 11/17/14 |
| 3 | Elkhorn Ridge Estates-47 Building Lots | Malad, ID | | | | Marketed for sale with broker; several lots sold (described below) |
| | Lot #1 | | 135,000 | 155,000 | 142,834.78 | Sale approved [Docket No. 419]  Sale closed 8/29/13 |
| | Lot #2 | | 35,000 | 31,500 | 27,725.00 | Sale approved [Docket No. 492]  Sale closed 12/6/13 |
| | Lot #4 | | 35,000 | 35,000 | 30,893.21 | Sale approved [Docket No. 231]  Sale closed 4/26/13 |
| | Lot #5 | | 80,000 | 80,000 | 71,803.14 | Sale approved [Docket No. 231]  Sale closed 4/8/13 |
| | Lot #48 | | 80,000 | 80,000 | 73,620.84 | Sale approved [Docket No. 231]  Sale closed 4/9/13 |
| 5 | Manhattan Grille Condominium | Manhattan, MT | 49,000 | 51,000 | 45,933.32 | Sale approved [Docket No. 300]  Sale closed 6/5/13 |
| 6 | Twin Pines Apartments | Brigham City, UT | N.A. | | 172,020.02 | Sale approved [Docket No. 736].  Sale closed 9/14/14 |
| 8 | Summit Park Lot | Summit Park, UT | 40,000 | 37,500 | 32,477.61 | Court approved sale [Docket No. 135] Sale closed 1/24/13 |
| 9 | Bandanna Cabin | Fruitland, UT | 260,000 | 260,000 | 226,374.07 | Sale at auction approved [Docket No. 341]  Sale closed 10/24/13 |
| 11 | Outpost/Indian Canyon | Duchesne Co., UT | N.A. | 148,222.56 | 134,068.12 | Sale approved [Docket No. 269]  Sale closed 8/21/13 |
| 12 | East Meadows Mobile Home Park | Vernal, UT | N.A. | 1,025,000 | 979,620.29 | Sale approved [Docket No. 292]  Sale closed 7/29/13 |
| 13 | Quail Hollow Apartments | Vernal, UT | N.A. | N.A. | N.A. | Determined not owned by Receivership Estate |
| 14 | Residential Building Lots at 900 West | Salt Lake City, UT | N.A. | 70,000 | 65,295.00 | Sale approved [Docket No. 263]  Sale closed 5/8/13 |

| | | | | | |
|---|---|---|---|---|---|
| 15 | Cottonwood Road Property-4 acres | Salt Lake City, UT | N.A. | N.A. | N.A. | No equity; court approved release of property to lender [Dkt. No. 179] |
| 15 | Cottonwood Road Property-1 acre | Salt Lake City, UT | N.A. | 291,000 | 279,189.07 | Sale at auction approved [Docket No. 495] Sale closed 11/8/13 |
| 16 | National Note Office Building | West Jordan, UT | 285,000 | 285,000 | 55,903.09 | Sale approved [Docket No. 161] Sale closed 3/19/13 |
| 17 | Palmer Residence | West Jordan, UT | N.A. | N.A. | N.A. | No equity. Court approved abandonment of property [Dkt. No. 869] |
| 18 | Star Pointe Development | Salt Lake City, UT | N.A. | N.A. | 70,000.00 | Court approved settlement agreement with lender [Docket No. 608] |
| 19 | Autumn Ridge Subdivision-Phase I | Eagle Mtn., UT | | | | |
| | Phase I-Lot #2 | | 37,000 | 39,900 | 35,635.21 | Sale approved [Docket No. 692].  Sale closed 7/8/14 |
| | Phase I-Lot #3 | | 37,000 | 39,900 | 35,711.84 | Sale approved [Docket no. 644]  Sale closed 5/1/14 |
| | Phase I-Lot #4 | | 37,000 | 37,000 | 30,821.91 | Sale approved to builders [Docket No. 293] Sale closed 6/3/13 |
| | Phase I-Lot #6 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #7 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #8 | | 37,000 | 37,000 | 31,554.15 | Sale approved to builders [Docket No. 293] Sale closed 5/31/13 |
| | Phase I-Lot #11 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #16 | | 37,000 | 39,900 | 35,903.39 | Sale approved [Docket No. 696].  Sale closed 7/18/14 |
| | Phase I-Lot #21 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #30 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #33 | | 37,000 | 37,000 | 30,775.92 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #39 | | 37,000 | 39,900 | 35,903.39 | Sale approved [Docket No. 696].  Sale closed 7/18/14 |
| | Phase I-Lot #40 | | 37,000 | 37,000 | 30,911.96 | Sale approved to builders [Docket No. 293] Sale closed 9/25/13 |
| | Phase I-Lot #41 | | 37,000 | 37,000 | 30,857.73 | Sale approved to builders [Docket No. 293] Sale closed 8/14/13 |
| | Phase I-Lot #51 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #52 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #54 | | 37,000 | 37,000 | 31,554.16 | Sale approved to builders [Docket No. 293] Sale closed 5/31/13 |
| | Phase I-Lot #55 | | 37,000 | 37,000 | 31,355.85 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase I-Lot #60 | | 37,000 | 37,000 | 31,355.89 | Sale approved to builders [Docket No. 293] Sale closed 10/31/13 |
| | Phase II-62 Building Lots | | N.A. | 538,000 | 446,610.24 | Sale approved [Docket No. 460] Sale closed 10/1/13 |
| 21 | Cedar Fort Land (Fairfield)-8 acres | Fairfield, UT | 24,000 | 25,000 | 22,274.21 | Sale at auction approved [Docket No. 458] Sale closed 11/14/13 |
| 22 | Expressway Business Park | Spanish Fork, UT | | | | |
| | Unit #109 | | N.A. | N.A. | N.A. | No equity; Court approved release to lender [Docket No. 241] |
| | Unit #305 | | 65,000 | 69,000 | 55,840.79 | Court approved sale at auction [Docket No. 270] Sale closed 6/27/13 |
| | Unit #204 | | N.A. | N.A. | N.A. | No equity; Court approved release to lender [Docket No. 364] |
| | Unit #215 | | N.A. | 127,500 | 112,965.27 | Sale approved at auction [Docket No. 393] Sale closed 10/30/13 |
| 24 | Gooseberry Cabin | Fairview, UT | N.A. | N.A. | N.A. | No equity; Court approved release to lender [Docket No. 125] |
| 25 | Almond Heights-21 Building Lots | Toquerville, UT | 842,000 | | | |
| | Lot #F | | 32,300 | 31,000 | 24,733.41 | Sale approved [Docket No. 988] Sale closed 8/24/15 |
| | Lot #7 | | 38,000 | 32,000 | 29,388.95 | Sale approved [Docket No. 829]. Sale closed 12/18/14 |
| | Lot #10 | | 38,950 | 36,000 | 30,552.54 | Sale approved [Docket No. 906]. Sale closed 3/31/15 |
| | Lot #11 | | 37,050 | 32,000 | 6,788.12 | Sale approved [Docket No. 829]. Sale closed 12/16/14 |
| | Lot #12 | | 38,000 | 32,000 | 6,787.90 | Sale approved [Docket No. 829]. Sale closed 12/16/14 |
| | Lot #13 | | 37,050 | 32,000 | 6,787.75 | Sale approved [Docket No. 829]. Sale closed 12/16/14 |
| | Lot #17 | | 30,400 | 24,000 | 21,752.44 | Sale approved [Docket No. 829]. Sale closed 12/11/14 |
| | Lot #23 | | 31,350 | 24,000 | 20,346.06 | Sale approved [Docket No. 998]. Sale closed 9/4/15 |
| | Lot #24 | | 33,250 | 31,000 | 26,672.24 | Sale approved [Docket No. 998]. Sale closed 9/4/15 |
| | Lot #25 | | 35,150 | 34,000 | 29,216.54 | Sale approved [Docket No. 951]. Sale closed 5/21/15 |
| | Lot #26 | | 34,200 | 32,000 | 27,151.02 | Sale approved [Docket No. 829]. Sale closed 12/17/14 |
| 26 | Kanab Home | Kanab, UT | 199,000 | 197,000 | 18,162.90 | Sale approved [Docket No. 746]. Sale closed 9/4/14 |
| 27 | Farrell Business Park-12 Units | Gilbert, AZ | | | | |
| | Unit 103 | | 76,631 | 101,631 | 83,997.05 | Court approved sale at auction [Docket No. 202] Sale closed 5/31/13 |

| | | | | | | |
|---|---|---|---|---:|---:|---|
| | Unit 104 | | | 76,631 | 101,631 | 83,997.05 | Court approved sale at auction [Docket No. 202] Sale closed 5/31/13 |
| | Unit 105 | | | 80,000 | 92,000 | 70,392.98 | Court approved sale at auction [Docket No. 203] Sale closed 5/21/13 |
| | Unit 106 | | | 80,000 | 97,000 | 74,832.11 | Court approved sale at auction [Docket No. 204] Sale closed 6/7/13 |
| | Unit 107 | | | 80,000 | 90,000 | 67,699.81 | Court approved sale at auction [Docket No. 205] Sale closed 6/7/13 |
| | Unit 109 | | | 80,000 | 80,000 | 59,194.91 | Court approved sale at auction [Docket No. 206] Sale closed 5/16/13 |
| | Unit 110 | | | 80,000 | 80,000 | 59,194.91 | Court approved sale at auction [Docket No. 206] Sale closed 5/16/13 |
| | Unit 111 | | | 80,000 | 80,000 | 59,194.92 | Court approved sale at auction [Docket No. 206] Sale closed 5/16/13 |
| | Unit 113 | | | 80,000 | 107,000 | 85,094.45 | Court approved sale at auction [Docket No. 207] Sale closed 6/3/13 |
| | Unit 114 | | | 80,000 | 107,000 | 85,094.45 | Court approved sale at auction [Docket No. 207] Sale closed 6/3/13 |
| | Unit 115 | | | 80,000 | 80,000 | 59,288.00 | Court approved sale at auction [Docket No. 208] Sale closed 6/11/13 |
| | Unit 116 | | | 80,000 | 80,000 | 59,288.00 | Court approved sale at auction [Docket No. 208] Sale closed 6/11/13 |
| 28 | Clearview Business Park-8 Units | Mesa, AZ | | 415,954 | 737,000 | 591,295.43 | Court approved sale at auction [Docket No. 177] Sale closed 5/10/13 |
| 29 | Bear Grove Industrial Park-8 Lots | Byron, MN | | 1,675,200 | | | Property is listed for sale with broker; property encumbered by bond |
| | Parcel #8516 | | | 281,500 | 210,000 | 10,000.00 | Sale approved [Docket No. 853]. Sale closed 3/27/15 |
| | Parcel #8509 | | | 156,700 | 149,000 | 98,795.03 | Sale approved [Docket No. 849]. Sale closed 3/16/15 |
| | Parcel #8512 | | | 305,000 | 235,000 | 6,500.00 | Sale approved [Docket No. 854]. Sale closed 3/6/15 |
| | Parcel #6060 | | | 340,000 | 235,000 | 10,000.00 | Sale approved [Docket No. 875]. Sale closed 3/24/15 |
| | Lot 3, Block 1 (Parcel #8510) | | | 149,500 | 149,500 | 95,340.47 | Sale approved [Docket No. 989] Sale closed 9/30/15 |
| 30 | Georgia Single Family Residence | Temple, GA | | 135,000 | 125,000 | 106,843.83 | Sale approved [Docket No. 553] Sale closed 1/10/14 |
| 31 | Chicago Single Family Residence | Chicago, IL | | N.A. | N.A. | N.A. | No value; Court approved abandonment [Docket No. 434] Order 9/10/13 |
| 32 | Cleveland Single Family Residence | Cleveland, OH | | N.A. | N.A. | N.A. | No value; Court approved abandonment [Docket No. 434] Order 9/10/13 |
| 33 | Cleveland Building Lot | Cleveland, OH | | N.A. | N.A. | N.A. | No value; Court approved abandonment [Docket No. 434] Order 9/10/13 |
| 34 | Toledo Single Family Residence | Toledo, OH | | N.A. | N.A. | N.A. | No value; Court approved abandonment [Docket No. 434] Order 9/10/13 |
| | **Total** | | | **7,824,816.00** | **7,678,083.92** | **5,843,694.89** | |

EXHIBIT B

Wayne Klein, Receiver for National Note of Utah
10 Exchange Place, Ste. 502
Salt Lake City, UT 84111
801-456-4593

# STANDARDIZED FUND ACCOUNTING REPORT

Civil – Receivership Fund

## Fund Name: SEC v. National Note of Utah
## Civil Court Docket No. 2:12-CV-00591 BSJ

Reporting Period 10/01/2015 to 12/31/2015

## Standardized Fund Accounting Report for National Note of Utah - Cash Basis

Receivership; Civil Court Docket No. 2:12-CV-00591 BSJ

Reporting Period 10/01/2015 to 12/31/2015

### Fund Accounting (See Instructions):

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 10/01/2015): | $5,898,314.61 | | |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | $0.00 | | |
| Line 3 | Cash and Securities | $0.00 | | |
| Line 4 | Interest/Dividend Income | $841.85 | | |
| Line 5 | Business Asset Liquidation | $0.00 | | |
| Line 6 | Personal Asset Liquidation | $0.00 | | |
| Line 7 | Third-Party Litigation Income | $115,462.22 | | |
| Line 8 | Miscellaneous - Other | $160.00 | | |
| | Total Funds Available (Lines 1 - 8) | | $6,014,778.68 | |
| | *Decreases in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | $0.00 | | |
| Line 10 | Disbursements for Receivership Operations | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $125,790.50 | | |
| Line 10b | *Business Asset Expenses* | $9,433.86 | | |
| Line 10c | *Personal Asset Expenses* | $0.00 | | |
| Line 10d | *Investment Expenses* | $0.00 | | |
| Line 10e | *Third-Party Litigation Expenses* | | | |
| | 1. Attorney Fees | $254,064.40 | | |
| | 2. Litigation Expenses | $14,354.36 | | |
| | *Total Third-Party Litigation Expenses* | $268,418.76 | | |
| Line 10f | *Tax Administrator Fees and Bonds* | $0.00 | | |
| Line 10g | *Federal and State Tax Payments* | $0.00 | | |
| | Total Disbursements for Receivership Operations | $403,643.12 | | |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | $0.00 | | |
| | Fund Administrator | | | |
| | Independent Distribution Consultant (IDC) | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | $0.00 | | |
| | 3. Miscellaneous | $0.00 | | |
| | *Total Plan Development Expenses* | $0.00 | | |
| Line 11b | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | $0.00 | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |

| | | | | |
|---|---|---|---|---|
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | $0.00 | | |
| | 3. Investor Identification: | $195.00 | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | $0.00 | | |
| | 5. Miscellaneous | $0.00 | | |
| | 6. Federal Account for Investor Restitution | $0.00 | | |
| | (FAIR) Reporting Expenses | $0.00 | | |
| | *Total Plan Implementation Expenses* | $195.00 | | |
| | Total Disbursements for Distribution Expenses Paid by the Fund | $195.00 | | |
| | | | | |
| Line 12 | Disbursements to Court/Other: | | | |
| | *Investment Expenses/Court Registry Investment* | | | |
| Line 12a | *System (CRIS) Fees* | $0.00 | | |
| Line 12b | *Federal Tax Payments* | $0.00 | | |
| | Total Disbursements to Court/Other | $0.00 | | |
| | Total Funds Disbursed (Lines 9 - 12): | | $403,838.12 | |
| | | | | |
| Line 13 | Ending Balance (As of 12/31/2015): | | | $5,610,940.56 |
| | | | | |
| Line 14 | Ending Balance of Fund - Net Assets: | | | |
| Line 14a | *Cash & Cash Equivalents* | $5,610,940.56 | | |
| Line 14b | *Investments* | $0.00 | | |
| Line 14c | *Other Assets or Uncleared Funds* | $0.00 | | |
| | Total Ending Balance of Fund - Net Assets | | | $5,610,940.56 |

Other Supplemental Information:

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT To Be Paid by the Fund:* | | | |
| Line 15 | Disbursements for Plan Administration Expenses Not Paid by the Fund: | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | $0.00 | | |
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | $0.00 | | |
| | 3. Miscellaneous | $0.00 | | |
| | *Total Plan Development Expenses Not Paid by the Fund* | $0.00 | | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | |

| | | | | |
|---|---|---|---|---|
| | Fund Administrator | | | |
| | IDC | | | |
| | Distribution Agent | | | |
| | Consultants | | | |
| | Legal Advisers | | | |
| | Tax Advisers | | | |
| | 2. Administrative Expenses | $0.00 | | |
| | 3. Investor Identification: | $0.00 | | |
| | Notice/Publishing Approved Plan | | | |
| | Claimant Identification | | | |
| | Claims Processing | | | |
| | Web Site Maintenance/Call Center | | | |
| | 4. Fund Administrator Bond | $0.00 | | |
| | 5. Miscellaneous | $0.00 | | |
| | 6. FAIR Reporting Expenses | $0.00 | | |
| | Total Plan Implementation Expenses Not Paid by the Fund | $0.00 | | |
| Line 15c | Tax Administrator Fees and Bonds Not Paid by the Fund | $0.00 | | |
| | **Total Distributions for Plan Administration Expenses Not Paid by the Fund** | $0.00 | | |
| | | | | |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| | Investment Expenses/Court Registry Investment | | | |
| Line 16a | System (CRIS) Fees | $0.00 | | |
| Line 16b | Federal Tax Payments | $0.00 | | |
| | **Total Disbursements to Court/Other Paid by the Fund:** | $0.00 | | |
| Line 17 | **DC & State Tax Payments** | $0.00 | | |
| Line 18 | **No. of Claims:** | | | |
| Line 18a | # of Claims Received This Reporting Period | 266 | | |
| Line 18b | # of Claims Received Since Inception of Fund | 464 | | |
| Line 19 | **No. of Claimants/Investors:** | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | 0 | | |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | 0 | | |

Receiver: National Note of Utah

By: _Wayne Klein_
(signature)

Wayne Klein
(printed name)

Receiver
(title)

Date: January 20, 2016

| NNU SFAR - 4th Quarter 2015 | | | | | | | |
|---|---|---|---|---|---|---|---|
| Line Breakdown | | | | | | | |
| | Line 2 | Line 4 | Line 5 | Line 6 | Line 7 | Line 8 | Total |
| Rent Received | $0.00 | | | | | | |
| Overpaid Investors | | | | | $115,462.22 | | |
| National Note | | | $0.00 | $0.00 | $0.00 | | |
| Real Estate Holding | | | $0.00 | | | | |
| Royalties Received | | | | | | $0.00 | |
| Interest | | $841.85 | | | | | |
| Refunds | | | | | | $0.00 | |
| Witness Fees | | | | | | $160.00 | |
| Advances by Receiver | | | | | | | |
| | $0.00 | $841.85 | $0.00 | $0.00 | $115,462.22 | $160.00 | $116,464.07 |
| | | | | | | | |
| | Line 10a | Line 10b | Line 10g | Line 10e-1 | Line 10e-2 | Line 11b-3 | Total |
| Receivership Expenses | $125,790.50 | $9,433.86 | $0.00 | $254,064.40 | $14,354.36 | $195.00 | |
| Refund Deposit from Prior Period | | $0.00 | | | | | |
| Adjustment - NNU Account | | $0.00 | | | | | |
| | $125,790.50 | $9,433.86 | $0.00 | $254,064.40 | $14,354.36 | $195.00 | $403,838.12 |
| | | | | | | | |
| | Line 14a | | | | | | |
| National Note | $40,207.72 | | | | | | |
| Savings | $122,848.27 | | | | | | |
| High-Yield Operating | $4,362,311.66 | | | | | | |
| Real Estate Holding | $81,334.84 | | | | | | |
| High-Yield Real Estate | $1,004,238.07 | | | | | | |
| | $5,610,940.56 | | | | | | |
| | | | | | | | |
| Created by James Shupe on 1/19/2016 | | | | | | | |