Peggy Hunt (Utah State Bar No. 6060)
John J. Wiest (Utah State Bar No. 15767)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
        wiest.john@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>     v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>               Defendants. | **SIXTEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER**<br>*For the Quarter Ending June 30, 2016*<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of

Utah, LC ("National Note"), as well as certain subsidiaries and entities affiliated with National

Note ("Related Entities"), and the assets of Wayne LaMar Palmer ("Palmer"), collectively, the

"Receivership Entities" hereby submits this Sixteenth Status Report for the period April 1, 2016

through June 30, 2016 (the "Reporting Period").

### I.

### PROCEDURAL HISTORY

This action (the "Civil Case") was commenced by the United States Securities and

Exchange Commission (the "SEC") on June 25, 2012, against Defendants Palmer and National

Note by the filing of a Complaint in the United States District Court for the District of Utah (the "Court").[1] The Court held a trial on November 2, 2015 and entered judgment against Palmer and National Note in favor of the SEC on November 30, 2015.[2]

On August 19, 2015, a grand jury criminal indictment was issued for Palmer and his cousin, Julieann Palmer Martin. They are charged with wire fraud, mail fraud, and money laundering. The criminal trial is scheduled to begin May 1, 2017.

This is the Sixteenth Status Report for the period of April 1, 2016 through June 30, 2016, defined above as the "Reporting Period."

## II.

## REAL ESTATE TRANSACTIONS

Attached hereto as **Exhibit A** is a chart setting forth the status of all real properties in the Receivership Estate as of June 30, 2016. During the Reporting Period, the Receiver made progress in his efforts to sell the remaining properties in the Receivership Estate as discussed in further detail below.

A.    **Real Property Sales Closed During the Reporting Period**. One property sale was closed during the Reporting Period as follows:

1.    Byron Minnesota Industrial Park. On April 11, 2016, the Court entered an Order approving the public sale of this vacant industrial building lot in Byron, Minnesota.[3] No higher and better offers were submitted for the property and, thus, the auction was canceled and

---

[1] Docket No. 1.

[2] Docket No. 1043.

[3] Docket No. 1118.

the property was sold to the stalking horse bidder. The sale closed on June 15, 2016. In total, the Receivership Estate received $30,019.74, after paying more than $225,000.00 in unpaid property taxes and assessments and paying sales commissions and closing costs. There is one property left in this industrial development in Minnesota.[4]

**B.**    **Property Offers Awaiting Court Approval**. The Receiver filed two motions with the Court, during the Reporting Period, seeking approval to sell two additional properties:

1.    Expressway Business Park. On January 26, 2016, the Receiver accepted, subject to Court approval, an offer to purchase 27.5 of the 30 acres of industrial land owned by the Receivership Estate at Expressway Business Park located in Spanish Fork, Utah for $250,000.00. This property has environmental issues, resulting in this purchase offer in an amount far less than the appraised value. In addition to this offer, the Receiver received two alternative offers that would realize $1,250,000 for the property or a profit split, but over a period of several years. On May 6, 2016, the Receiver filed a Motion with Court describing these three options to the Court.[5] As set forth in the Motion and as stated at a hearing on the Motion held on June 8, 2016, the Receiver believes in an exercise of his business judgment that the sale of the property for $1,250,000 is in the best interest of the Receivership Estate. Although this sale will take several years to accomplish, the Estate will retain a lien interest against the property and, if the purchaser is successful, $1,250,000. The Court has requested that the Receiver obtain additional documentation and bids regarding environmental and wetlands

---

[4] *See* Docket No. 1174 (*Receiver's Notice of Public Sale Results*).

[5] Docket No. 1131.

impairments of the property. The Receiver is gathering the requested information to submit to the Court and will renew his Motion when the information is obtained.

      2.    <u>Fairfield Land</u>. On June 24, 2016, the Receiver filed a Motion seeking approval to conduct a public auction to sell this 85-acre parcel of land located in Fairfield, Utah.[6] The amount of the initial bid is $213,925.00. On June 28, 2016, the Court entered an Order approving a public sale of this property, using the initial bid as stalking horse bid.[7] At the close of the Reporting Period, the Receiver had set an auction date of August 2, 2016 and has begun publishing notice of the scheduled auction.

    C.    <u>**Remaining Real Estate Holdings**</u>. If the sales of the two properties listed in Part IV.B close, six property groups will remain unsold in the Receivership Estate, each of which is discussed below.[8]

      1.    <u>Elkhorn Ridge Estates Lots</u>. The Receivership Estate owns 42 developed building lots in this subdivision located in Malad, Idaho. Only two vacant lots have been sold, both of which sales occurred in 2013. Although the Receiver continues to actively market these properties for sale, he is informed that there is limited demand for developed building lots in this rural area. As this case moves forward, the Receiver will continue to consider options related to the sale of these lots, either individually or in bulk.

      2.    <u>Elkhorn Ridge Land</u>. The Receivership Estate also owns 217 acres of undeveloped, range land adjacent to the Elkhorn Ridge Estates lots discussed immediately above. This land competes with a significant supply of other range land in the area. The Receiver

---

[6] Docket No. 1170.

[7] Docket No. 1173.

[8] *See* **Exhibit A**.

4

continues to actively market the property. In April 2016, the Receiver obtained an appraisal, which assigned a value of $260,000.00 to the land. The property is currently being marketed for sale for $250,000.00.

      3.     <u>Deer Meadows Lot</u>. This recreational building lot, located in Duchesne County, Utah, is in a remote location with challenging topography. To date, the Receiver has not received any serious inquiries on this property, but he continues to actively market it for sale. As this case moves forward, the Receiver will continue to consider options related to the sale of this land.

      4.     <u>Overland Trails, Eagle Mountain, Utah</u>. The Receiver obtained an appraisal for this property in February 2016. The appraisal indicates that there may be some equity over and above the value of six deeds of trust that currently exist, some of which may be contested by the Receiver. As a result, the Receiver has been marketing the property for sale and will continue to evaluate the benefit of this property to the Receivership Estate.

      5.     <u>Almond Heights Lots 21 and 22</u>. Two building lots remain in the Almond Heights subdivision located in Toquerville, Utah, both of which continue to be marketed for sale by the Receiver. These two lots sit on the edge of a cliff, dropping down almost a hundred feet to a creek. Land surveys by potential buyers earlier in 2016 revealed that the lots may not be suitable for residential development. The Receiver is considering options for the Receivership Estate in relation to these lots.

      6.     <u>Bear Grove Industrial Park, Block 1, Lot 4</u>. One industrial building lot located in Byron, Minnesota remains unsold, and is currently being marketed. The Receiver recently raised the listing price of this property from $235,000.00 to $285,000.00—based on the successful sales of other lots in this industrial park. This lot is subject to significant unpaid

property taxes and development bonds. If the property is sold for close to the new listing price in the relatively near future, the Receiver believes there will be equity in the property despite amounts owed in taxes and assessments.

## III.

## REAL ESTATE LIENS

A.   **Assignments of Beneficial Interest ("ABIs")**. At the time the Receiver was appointed, 349 ABIs with face amounts of $32.4 million had been recorded against 49 properties in the Receivership Estate. The Receiver maintains that all ABIs are invalid as a matter of law, and has obtained the voluntary release of hundreds of ABIs by stipulation. All ABI holders who did not agree to release their ABIs have been named as Defendants in an action seeking a judgment declaring the ABIs to be invalid (the "ABI Action").[9] At this point, only six ABIs (with ABI face amounts of $1,275,000.00) remain against three properties or the net sale proceeds thereof (Elkhorn Lot 11, Expressway Business Park, and Farrell Business Park). Motions for summary judgment have been fully briefed and argued as to five of the ABIs, and the Court has taken them under advisement. The sixth ABI is recorded in favor of Defendant Terry Stallman, who had been avoiding service. With the Court's assistance, Mr. Stallman was served, and on April 15, 2016, a default certificate was entered against Mr. Stallman. But, Mr. Stallman filed a petition seeking relief under Chapter 7 of the Bankruptcy Code on April 18, 2016, before entry of a default judgment. The Receiver has been in contact with the trustee appointed in Mr. Stallman's bankruptcy case and Mr. Stallman's bankruptcy counsel, and has learned that the case will not be administered because it is a "no asset" case, the ABI is not going to be administered, and once the case is closed the Receiver will be in a position to request the

---

[9] *Klein v. Adams*, Civ. No. 2:14CV614-BSJ (D. Utah).

entry of the default judgment, which Mr. Stallman will not oppose. It is anticipated that the bankruptcy case will be closed in mid-August. When this occurs, the summary judgment motions related to the five other ABIs will be ready for a ruling by the Court.

**B.** **Deeds of Trust**. The Receiver identified thirteen properties of the Receivership Estate on which deeds of trust had been recorded at the time of his appointment. At this point, all deeds of trust have satisfied or released except as to the two properties noted below.

1. <u>Overland Trails, Eagle Mountain, Utah</u>: There are six deeds of trust remaining and recorded against this property claiming to secure a total of $252,136.91 in debt. As discussed in Part III.C above, the Receiver is actively marketing this property as a result of its potential to have equity over and above the amount of the purported interests. Some of these trust deed interests likely will be disputed by the Receiver.

2. <u>Expressway Business Park, Spanish Fork, Utah</u>. There are three deeds of trust remaining and recorded against this property, which are held by Westar Equities, Jeff Sessions, and Evolution Holdings. Westar Equities maintains that it is owed the principal amount of $9,634.30 plus accrued interest. The deed interests of Sessions and Evolution Holdings are in unspecified amounts, but the Receiver believes that the purported debts relate to tenant improvements that were promised by National Note but never completed. Because the Receiver believes that National Note holds a superior lien that was effective before the dates of the deeds of trust given to Sessions and Evolution Holdings, the Receiver intends to contest these deeds of trust.

### IV.

### LITIGATION AND SETTLEMENTS

In addition to the ABI Action discussed in Part III.A above, the Receiver filed approximately 140 lawsuits to recover transfers made by National Note and its affiliated entities

(the "Avoidance Actions"). As reported in an earlier Status Report, many of these Avoidance Actions have been resolved, and as of the last Report, only seven actions remained.

A. **Avoidance Lawsuits Resolved During Reporting Period**. During the Reporting Period, the Receiver resolved the following actions:

1. Max and Melaine Andreasen.[10] On May 31, 2016, judgment was entered against Max and Melanie Andreasen in the amount of $64,031.72.[11] The Receiver is evaluating collection of this judgment.

2. Victor Wagner and Affiliated Companies.[12] This Avoidance Action was filed against Mr. Wagner, a former National Note employee, and two entities he controls, Federal Financial Services, LLC and Note Funding, Inc. On May 17, 2016, the Receiver obtained default judgments against the entity defendants in the total amount of $194,387.26.[13] Mr. Wagner recently filed a petition seeking relief under Chapter 7 of Bankruptcy Code, thereby staying litigation of the Avoidance Action against him personally. The Receiver evaluated the possibility of seeking a nondischargeable judgment against Mr. Wagner, but determined that this action would not be beneficial to the Receivership Estate. Although the Receiver prepared a proof of claim in response to the Chapter 7 trustee's initial request for creditors to file claims, the trustee has since filed a no asset report in the case. Accordingly, because Mr. Wagner has received a discharge and there are no apparent assets for creditors, the Receiver intends to request that the

---

[10] *Klein v. Andreasen, et al.*, Civ. No. 2:13CV0462 (D. Utah) (Nuffer, C.J.)

[11] *Id.*, Docket No. 59.

[12] Civ. No. 2:13CV557 (D. Utah) (Shelby, J.).

[13] *Id.*, Docket Nos. 35 and 36.

action he has filed be dismissed without prejudice as to Mr. Wagner.

   3.   <u>Michelle Turpin & Associates, P.C. and Michelle Turpin, P.C.</u>[14] Cross

Motions for Summary Judgment were filed in this Avoidance Action, and oral argument

was held on May 10, 2016. On July 5, 2016, just after the conclusion of the Reporting

Period, the Court has entered its Memorandum Decision and Order, granting the Receiver

summary judgment and judgment against the Defendants in the amount of $78,135.37.[15]

   B.   <u>**Pending Avoidance Actions**</u>. The status of the four Avoidance Actions still

pending is summarized below:

   1.   <u>Christy Palmer.</u>[16] Mrs. Palmer filed a petition seeking relief under Chapter

13 of the Bankruptcy Code in the District of Utah on November 4, 2015, and this case converted

to Chapter 7 on December 10, 2015. This is Mrs. Palmer's second bankruptcy case – her first

case was dismissed when she failed to appear at her meeting of creditors. As a result of the

bankruptcy filing, the Receiver's Avoidance Action against Mrs. Palmer has been stayed. The

Chapter 7 trustee recently filed a request for creditors to file claims, and the Receiver intends to

file a proof of claim prior to the bar date.

   2.   <u>Kleen Water Power.</u>[17] On September 9, 2015, an Order was entered

adding Carlton Gentry, the president of the company, as a Defendant in this Avoidance Action.

The Receiver is in the process of attempting service of process on Gentry, a Canadian citizen,

which is proving difficult.

---

[14] Civ. No. 2:14CV302 (D. Utah) (Shelby, J.).

[15] *Id.*, Docket No. 46.

[16] *Klein v. Palmer*, Civ. No. 2:13CV581 (D. Utah) (Wells, M.J.).

[17] *Klein v. Kleen Water Power et al.*, Civ. No. 2:13CV550 (D. Utah) (Furse, M.J.).

3.  <u>Joel Blakeslee and Related Parties.</u>[18] Summary judgment was previously entered in this Avoidance Action against Defendant the Blakeslee Family Living Trust. Since that time, the Receiver has taken the deposition of Joel Blakeslee and has visited properties he owns. On June 30, 2016, after settlement discussions with Mr. Blakeslee failed, the Receiver filed a Summary Judgment Motion against Mr. Blakeslee.

4.  <u>Fred Myer.</u>[19] The Receiver's tentative settlement with Mr. Myer was rejected by the Court. The dispute with Mr. Myer revolves around who has the right to claim credit for an account balance that was transferred from Mr. Myer to a third party. The third party's Proof of Claim was approved by the Court, so the Receiver has resumed his litigation against Mr. Myer. Trial is set for September 26, 2016, but the parties are in further settlement negotiations.

C.  **Settlements**. No settlement agreements were entered into during the Reporting Period. Ten prior Court-approved settlements exist where the Defendants continue to make installment payments to the Receivership Estate as agreed. Eight of those Defendants are current on their payment obligations, and the Receiver is pursuing remedies against the two in default.

## V.

## <u>CLAIMS PROCESS</u>

The claims process began on September 1, 2015, when the Court entered an *Order Granting Receiver's Amended Motion Seeking Approval of Proposed Claim Procedures and*

---

[18] *Klein v. Blakeslee et al.,* Civ. No. 2:13CV405 (D. Utah) (Campbell, J.).

[19] *Klein v. Myer*, Civ. No. 2:13CV504 (D. Utah) (Nuffer, C.J.).

*Accompanying Forms and Setting Bar Date.*[20] The bar date to file Proofs of Claim expired on November 3, 2015. The *Receiver's Initial Claims Report* was filed March 4, 2016.[21] The following summarizes the status of the claims process:

A.     **Claims Received**. A total of 466 Proofs of Claim were received by the Receiver by March 4, 2016, at which time the Receiver filed his *Initial Claims Report*. Each claimant was assigned a claim number and the claim number, along with confirmation of receipt of each claim, was sent to each claimant. One additional claim was submitted shortly after the *Initial Claims Report* was filed, for a total of 467 claims. These 467 Proofs of Claim assert claims in a total amount of $68,282,257.59.[22]

B.     **Motions Filed**. The Receiver filed motions with the Court, recommending that the 467 Proofs of Claim be allowed in the amount asserted in the Proof of Claim, allowed in a reduced amount, or be disallowed.[23] Claimants whose Proofs of Claim were being recommended for reduction or disallowance were informed of the deadline by which they would need to file any objections to the Receiver's recommendations.

C.     **Objections**. Objections were filed with the Court relating to twelve of the Proofs of Claim where the Receiver recommended that the claims asserted be allowed in reduced

---

[20] Docket No. 999.

[21] Docket No. 1088.

[22] The Receiver notes that the *Initial Claims Report* reported total claim amounts of $67,124,693.09. The Receiver has since discovered that this total was undercounted, since it did not include the portion of claims relating to Homeland Minerals' "Net Profit Interests." The correct total (excluding the late-submitted claim) should have been $68,224,693.09. This error only affected the total claim amount; it did not affect the recommended claim amounts listed in the *Initial Claims Report*, which totals were correct.

[23] Docket No's. 1089, 1092, 1093, and 1123.

amounts or disallowed.[24]

D.  **Hearing and Revised Recommendations**. At a hearing on May 18, 2016, the
Court heard arguments from the parties related to the twelve disputed Proofs of Claim. A number
of Orders were entered resolving those objections, as summarized in the table below. Based on
the Court's observations and rulings at the hearing, the Receiver revised his recommendation
regarding eleven other Proofs of Claim, for which he original recommended disallowance. The
Receiver subsequently filed Motions recommending that four of these Proofs of Claim be
allowed in the amounts asserted by the claimants, six be allowed in reduced amounts, and one be
disallowed.

E.  **Orders Entered**. As of the end of the Reporting Period, the Court had entered
Orders finalizing the allowed claim amount (including disallowed claims) for 457 of the 467
Proofs of Claim submitted. Based on these Proofs of Claim, the total allowed amount is
$47,422,710.30.[25] These Orders are summarized in the table below:

| Docket No. | Date Entered | No. of Proofs of Claims At Issue | Result |
|---|---|---|---|
| 1116 | 4/11/16 | 133 | Allowed Proofs of Claim in amounts asserted |
| 1116 | 4/11/16 | 205 | Allowed Proofs of Claim in amounts less than asserted |
| 1142 | 5/24/16 | 25 | Disallowed Proofs of Claim entirely |
| 1143 | 5/24/16 | 81 | Allowed Proofs of Claim in amounts less than asserted |
| 1144 | 5/24/16 | 1 | Allowed Proof of Claim in amount less than asserted |
| 1145 | 5/24/16 | 1 | Allowed Proof of Claim in amount asserted |

[24] Docket Nos. 1107-1110, 1112-1115, and 1120.

[25] This amount is $110.32 more than stated in earlier papers as a result of discovered calculation errors by the Receiver or claimants.

| 1146 | 5/24/16 | 1 | Allowed Proof of Claim in amount less than asserted |
| 1150 | 5/25/16 | 1 | Allowed Proof of Claim in amount less than asserted |
| 1151 | 5/25/16 | 1 | Allowed Proof of Claim in amount less than asserted |
| 1153 | 6/1/16 | 1 | Allowed Proof of Claim in amount less than asserted |
| 1157 | 6/8/16 | 6 | Allowed Proofs of Claim in amounts less than asserted |
| 1167 | 6/14/16 | 1 | Allowed Proof of Claim in amount asserted |
| **Total** | | **457** | |

F.    **Proofs of Claim Remaining to be Resolved**. There are ten disputed Proofs of

Claim for which Orders have not been entered as of the end of the Reporting Period, as follows:

| Proof of Claim Number(s) | Receiver's Recommendation | Reason | Status |
|---|---|---|---|
| 1320, 1321, 1394, 1401 | Disallow | ABI holders | Awaiting decision in ABI Litigation |
| 1182, 1242, 1266, 1374 | Allow | Revised recommendation after May 18th Hearing | Proposed Orders submitted on June 10, 2016 |
| 1128 | Disallow | Claimant is overpaid investor | Awaiting July 7, 2016 objection deadline |
| 1463 | Disallow | Late-filed Proof of Claim | Pre-trial hearing is scheduled for August 3, 2016[26] |
| **Total: 10** | | | |

G.    **Recommendation of Distribution Methodology**. The SEC has advised the

Receiver that it would like the Receiver to propose to the Court a distribution methodology to be

used in allocating funds that will be sent to holders of allowed claims. The Receiver intends to

---

[26] Since the end of the Reporting Period, the Receiver has entered into an agreement with the holder of this Proof of Claim to settle this dispute which is conditioned on Court approval. The Receiver intends to submit a settlement proposal to the Court.

consult with the SEC in advance of filing a Motion with the Court. The Receiver is analyzing the types and nature of allowed claims and is in the process of formulating a distribution methodology to recommend to the Court for approval. At this time, given the limited number of remaining disputed Proofs of Claim, the Receiver believes he can move forward with proposing a plan of distribution in the near future.

VI.

**FINANCIAL ANALYSIS**

A.    **Receivership Financial Information**. The following financial information is provided for the Reporting Period:

    1.    Bank Accounts. The Receiver maintains two bank accounts for the operation of the Receivership Estate: a general operating account (the "Operating Account") and an account holding the net proceeds of real estate sales to which disputed interests have attached (the "Real Estate Account").[27] The balances in these accounts as of the close of the Reporting Period are as follows:

| Account | Account Balance |
|---|---|
| Operating Account | $5,083,254.55 |
| Real Estate Account | $960,716.92 |
| **TOTAL** | **$6,043,971.47** |

    2.    Operating Account Deposits. The sources of funds deposited into the Operating Account during the Reporting Period are shown in the following table:

---

[27] Pursuant to the Court's *Order Approving the Receiver's Third Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from July 1, 2013 through December 31, 2013,* Docket No. 828, the Receiver has established a separate Savings Account tied to the Operating Account in which he is holding 20% of the professional fees incurred by him and his counsel related to that fee application. Money to open this Savings Account was transferred from the Operating Account. This Savings Account has a current balance of $122,879.07, and is in addition to the amounts reported below.

| Source | Amount In |
|---|---|
| Settlement Agreement proceeds | $7,704.00 |
| Real estate sales proceeds, lease | $34,194.74 |
| Interest, bank adjustments | $935.77 |
| **TOTAL** | **$42,834.51** |

3.      Operating Account Expenditures. The following table shows the categories of operating expenses that have been paid from the Operating Account during the Reporting Period:

| Type of Expense | Amount Out |
|---|---|
| Real estate publication, appraisals | $1,877.54 |
| Miscellaneous operating expenses | $168.40 |
| **TOTAL** | **$2,045.94** |

4.      Real Estate Account Deposits and Withdrawals. The only transactions in the Real Estate Account were the additions of accrued interest in the amount of $134.79.

5.      SFAR. Attached as **Exhibit B** is a copy of the Standardized Fund Accounting Report for the Reporting Period

6.      Administrative Expenses. On June 14, 2016, the Court entered an *Order Approving Seventh Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from October 1, 2015 Through March 31, 2016.*[28] On June 15, 2016, $129,552.50 was paid to Klein & Associates for work of the Receiver and his staff during this six-month period, and $180,037.13 was paid to Dorsey & Whitney LLP for its fees and expenses.

For the current Reporting Period, the Receiver and his staff have spent a total of 245.5 hours on behalf of the Receivership Estate. Services provided by the Receiver during the

---

[28] Docket No. 1168.

15

Reporting Period are in the total amount of $39,770.50. Dorsey & Whitney LLP's total fees and expenses incurred during the Reporting Period are in the total amount of $105,089.67.[29]

## VII.

## NEXT STEPS

At this time, the Receiver anticipates addressing the following priorities in the coming months:

1.    <u>Plan of Distribution</u>. The Receiver anticipates working with the SEC in the next reporting period to make a recommendation to the Court on a plan of distribution. Once a distribution methodology is devised and ready for submission to the Court, the Receiver will take appropriate actions to seek approval of the methodology and a plan of distribution from the Court. All those holding allowed claims will receive notice of this request by the Receiver and be given an opportunity to respond, if desired. As soon as a plan of distribution is approved, the Receiver anticipates that he will be authorized to make an initial distribution to holders of allowed Proofs of Claim.

2.    <u>Litigation</u>. As discussed above, the Receiver anticipates a relatively small amount of litigation in the few cases against the four defendants in the ABI Action and the four remaining Avoidance Actions.

3.    <u>Collection of Judgments</u>. The Receiver anticipates continuing his efforts to collect on judgments that he has obtained.

4.    <u>Property Sales</u>. As discussed above, the Receiver will continue his efforts to sell the remaining real estate held by the Receivership Estate. Based on offers already

---

[29] A summary of fees and expenses that have been incurred on behalf of the Receivership Estate by the Receiver and the Receiver's legal counsel in prior Reporting Periods is set forth in each of the earlier Status Reports and the interim Fee Applications.

received, the Receiver hopes to close on at least two additional properties during the next Reporting Period.

**VIII.**

**<u>CONCLUSION</u>**

Solid progress was made during the Reporting Period, particularly with the claims process. The Receiver looks forward to completing the claims process so that a plan of distribution may be recommended to the Court and an initial distribution can be made to holders of allowed claims.

DATED this 20th day of July, 2016.

_Wayne Klein_
WAYNE KLEIN, Receiver

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the above **SIXTEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER** was filed with the Court on this 20th day of July, 2016, and served via ECF on all parties who have requested notice in this case. A copy was also served on Wayne Palmer by U.S. Mail, postage prepaid at:

Wayne Palmer
8816 South 2240 West
West Jordan, UT 84088

/s/ Candy Long _____