Peggy Hunt (Utah State Bar No. 6060)
John J. Wiest (Utah State Bar No. 15767)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
       wiest.john@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br>v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>             Defendants. | **EIGHTEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER**<br>*For the Quarter Ending December 31, 2016*<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of Utah, LC ("National Note"), as well as certain subsidiaries and entities affiliated with National Note ("Related Entities"), and the assets of Wayne LaMar Palmer ("Palmer"), collectively, the "Receivership Entities" hereby submits this Eighteenth Status Report, for the period October 1, 2016 through December 31, 2016 (the "Reporting Period").

I.

## PROCEDURAL HISTORY

This action (the "Civil Case") was commenced by the United States Securities and Exchange Commission (the "SEC") on June 25, 2012, against Defendants Palmer and National Note by the filing of a Complaint in the United States District Court for the District of Utah (the "Court").[1] The Court held a trial on November 2, 2015. On November 30, 2015 the Court entered judgment against Palmer and National Note.[2]

On August 19, 2015, a grand jury criminal indictment was issued for Palmer and his cousin, Julieann Palmer Martin. They are charged with wire fraud, mail fraud, and money laundering. The criminal trial is scheduled to begin May 1, 2017.

II.

## REAL ESTATE TRANSACTIONS

Attached hereto as **Exhibit A** is a chart setting forth the status of all real properties in the Receivership Estate as of December 31, 2016. During the Reporting Period, the Receiver made some progress in his efforts to sell the remaining properties in the Receivership Estate as discussed in further detail below. A summary of the status of all unsold properties listed in Exhibit A not described below is included in the Receiver's *Sixteenth Status Report*.[3]

    A.    **Real Property Sales Closed During the Reporting Period.** No property sales were closed during the Reporting Period.

---

[1] Docket No. 1.

[2] Docket No. 1043.

[3] Docket No. 1177.

**B. Property Offers Subject to Court Approval.** The disposition of two properties were proposed to the Court during the Reporting Period and a motion relating to a third was pending at the conclusion of the Reporting Period as follows:

1. Almond Heights Lots 21 & 33. On December 21, 2016, the Receiver filed an *Amended Motion Requesting Order Approving Sale of Properties Free and Clear of Interests and Memorandum in Support*,[4] seeking Court approval to sell two developed building lots located in Toquerville, Utah for $7,700.00. This Amended Motion included information requested by the Court at an earlier hearing, including an engineering report. The Receiver also provided information from the Washington County Treasurer notifying the Receiver that his request to lower the property assessment for the two lots to $11,500.00 was accepted. The Court entered an order approving publication of notice of the sale[5] and a hearing was set for January 13, 2017.

2. Elkhorn Lot #3. Also on December 21, 2016, the Receiver filed a *Motion Requesting Order Approving Sale of Elkhorn Lot 3 Free and Clear of Interests and Memorandum in Support*,[6] requesting Court approval to sell a building lot in the Elkhorn Ridge subdivision near Malad, Idaho for $22,000. The Court entered an order approving publication of notice of the sale[7] and a hearing was set for January 23, 2017.

3. Expressway Business Park. Previously, the Receiver filed a *Motion Requesting Authorization Regarding Method of Disposition of Expressway Business Park Land*

---

[4] Docket No. 1237.

[5] Docket No. 1246.

[6] Docket No. 1241.

[7] Docket No. 1244.

*and Memorandum in Support,*[8] seeking Court approval related to industrial land located in Spanish Fork, Utah. A hearing on the Motion was held on June 8, 2016, and the Court instructed the Receiver to obtain additional information about the property. On August 16, 2016, the Receiver filed a *Supplement*[9] to the Motion, and the matter is currently pending before the Court.

C. **Tax Valuation Reduction**. As noted above, the Washington County Treasurer assented to the Receiver's request to reduce the assessed value of building lots 21 and 22 in the Almond Heights subdivision to a value of $11,500.00—a reduction of 62% from the prior assessed value.

## III.

## REAL ESTATE INTERESTS

A. **Assignments of Beneficial Interest ("ABIs")**. Out of 349 ABIs that had been issued by National Note prior to the Receiver's appointment, all but five had been released or declared invalid as of the start of the Reporting Period. On October 25, 2016, the Court entered a *Memorandum Decision,* finding that the remaining five ABIs were not valid interests against property of the Receivership Estate.[10] After this decision was entered, the holder of two of the ABIs at issue agreed to receive distributions on her Allowed Claim through the approved Plan of Distribution. The two holders of the remaining three ABIs filed an appeal of the Court's judgment to the Tenth Circuit Court of Appeals on December 22, 2016. This appeal is ongoing.

---

[8] Docket No. 1131.

[9] Docket No. 1189.

[10] *Klein v. Adams,* Civil No. 2:14-CV00614, Memorandum Decision, Oct. 25, 2016 (D. Utah) (Jenkins, J.) [Docket No. 525].

**B.     Deeds of Trust.** Of the thirteen properties on which deeds of trust had been recorded at the time of the Receiver's appointment, all deeds of trust have been satisfied or released except as to the two properties noted below.

1.     <u>Overland Trails, Eagle Mountain, Utah</u>: There are six deeds of trust remaining and recorded against this property, claiming to secure a total of $252,136.91 in debt. The Receiver does not believe that all of these deeds of trust are valid, but he is attempting to sell the property before incurring expense to dispute the interests. The Receiver is actively marketing this property, but at this time it is unclear whether there will be equity for the Receivership Estate.

2.     <u>Expressway Business Park, Spanish Fork, Utah</u>: There are three remaining deeds of trust recorded against this property, which are held by Westar Equities, Jeff Sessions, and Evolution Holdings. Westar Equities maintains that it is owed the principal amount of $9,634.30 plus accrued interest. The interests of Sessions and Evolution Holdings are in unspecified amounts, but the Receiver believes that the purported debts relate to tenant improvements that were promised by National Note but never completed. Because the Receiver believes that National Note holds a superior lien that was effective before the dates of the deeds of trust given to Sessions and Evolution Holdings, the Receiver intends to contest the Sessions and Evolution Holdings deeds of trust.

## IV.

## LITIGATION/SETTLEMENTS

In addition to the action related to the ABIs discussed in Part III.A above, the Receiver filed approximately 140 lawsuits to recover transfers made by National Note and its affiliated entities (the "<u>Avoidance Actions</u>"). During the Reporting Period, the final Avoidance Action still

being litigated was resolved. Two settlements were proposed for approval, one of which will resolve a pending appeal.

A. **Final Avoidance Lawsuit Resolved During Reporting Period**. On October 19, 2016, the Avoidance Action against Christy Palmer—the final Avoidance Action still being litigated—was dismissed based on her discharge in bankruptcy.[11]

B. **Appeal: Michelle Turpin & Associates, P.C., and Michelle Turpin, P.C**. These law firms filed a *Notice of Appeal*, appealing a $78,135.37 judgment entered on May 31, 2016 in favor of the Receivership Estate. On December 23, 2016, the Receiver filed a *Motion Seeking Approval of Settlement Agreements*, seeking among other things, Court approval of a proposed settlement of the appeal under which the Receivership Estate will receive $55,000.00.[12] A hearing on this Motion was scheduled for January 13, 2017.

C. **Alaska Litigation**. A lawsuit that had been filed in the District of Alaska against National Note before the Receiver was appointed has been on hold since 2012. The Court in that case required quarterly status reports to be filed. During the Reporting Period, the plaintiffs, who are holders of Allowed Claims in this case, dismissed the Alaska action.[13]

D. **Green Apple Settlement**. On December 23, 2016, the Receiver also filed a Motion seeking Court approval of a settlement with Green Apple Holding LLC. A hearing on this Motion was scheduled for January 13, 2017.

---

[11] *Klein v. Palmer*, Civil No. 2:13CV-00581 (D. Utah) (Wells, M.J.) [Docket No. 51].

[12] Docket No. 1248.

[13] *Teixera-McCray v. National Note of Utah, LC*, Civil No. 3:12CV00089 (D. Alaska) (Beistline, J.) [Docket No. 48]. The Plaintiff's Motion to Dismiss was filed December 30, 2016 and was granted January 3, 2017, after the conclusion of the Reporting Period.

## V.

## **CLAIMS PROCESS**

A. **Resolution of Claim Objections**. As of November 7, 2016, Orders had been entered resolving outstanding issues related to claim objections and objections to the Receiver's proposed *Plan of Distribution*. Thereafter, on December 19, 2016, one investor filed *Notice of Proof of Claim Against Receivership Estate*.[14] The Receiver is working to resolve disputes related to that late-filed claim.

B. **Initial Distribution**. On November 8, 2016, the Court entered an *Order Granting Receiver's Motion for Approval of (1) Proposed Distribution Methodology and Plan of Distribution, and (2) Proposed Initial Distribution as Modified*,[15] approving the Receiver's proposed distribution methodology and *Plan of Distribution* and authorizing the Receiver to make an initial distribution.[16] On November 14, 2016, the Receiver distributed $4.49 million to 437 "Allowed Claimants."

C. **Reissued Distribution Checks**. The Receiver was required to reissue dozens of distribution checks, mostly as a result of claimants having changed custodians for their retirement accounts, or requests for distributions to be made differently than set forth in their Proofs of Claim. In a few cases, checks were returned because the claimants had moved. The Receiver located new addresses and re-sent distribution checks to these claimants.

---

[14] Docket No. 1240.

[15] Docket No. 1231.

[16] Docket No. 1231.

D. **Uncashed Checks**. As of December 31, 2016, 403 of the 437 distribution checks have been cashed in the approximate amount of $4.027 million. The 34 distribution checks not yet cashed are in the total amount of $465,058.93.

## VI.

## FINANCIAL ANALYSIS

A. **Receivership Financial Information**. The following financial information is provided for the Reporting Period:

1. <u>Bank Accounts</u>. The Receiver maintains two bank accounts for the operation of the Receivership Estate: a general operating account (the "Operating Account") and an account holding the net proceeds of real estate sales to which disputed interests have attached (the "Real Estate Account").[17] The balances in these accounts as of the close of the Reporting Period are as follows:

| Account | Account Balance |
|---|---|
| Operating Account[18] | $1,400,611.57 |
| Real Estate Account | $961,489.52 |
| **TOTAL** | **$2,362,101.09** |

2. <u>Operating Account Deposits.</u> The sources of funds deposited into the Operating Account during the Reporting Period are shown in the following table:

---

[17] Pursuant to the Court's *Order Approving the Receiver's Third Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from July 1, 2013 through December 31, 2013*, Docket No. 828, the Receiver has established a separate Savings Account tied to the Operating Account in which he is holding 20% of the professional fees incurred by him and his counsel related to that fee application. Money to open this Savings Account was transferred from the Operating Account. This Savings Account has a current balance of $122,909.88, and is in addition to the amounts reported below.

[18] This includes uncashed distribution checks.

| Source | Amount In |
|---|---|
| Settlement agreement proceeds | $62,718.00 |
| Real estate tax sale net proceeds | $16,018.75 |
| Interest, bank adjustments | $579.46 |
| **TOTAL** | **$79,316.21** |

3. <u>Operating Account Expenditures.</u> The following table shows the categories of operating expenses that have been paid from the Operating Account during the Reporting Period:

| Type of Expense | Amount Out |
|---|---|
| Real estate engineer, appraisals, tax | $1,721.26 |
| Storage unit, postage, other operating | $1,655.58 |
| **TOTAL** | **$3,376.84** |

4. <u>Real Estate Account Deposits and Withdrawals.</u> The only transactions in the Real Estate Account were deposits of accrued interest.

5. <u>SFAR.</u> Attached as **Exhibit B** is a copy of the Standardized Fund Accounting Report for the Reporting Period

6. <u>Administrative Expenses.</u> On November 8, 2016, the Court entered an Order approving the *Eighth Interim Fee Application* for the Receiver and his counsel, covering the period from April 1, 2016 to June 30, 2016.[19] On November 9, 2016, the Receiver paid $39,770.00 to the Receiver and his firm and $104,939.67 to Dorsey & Whitney LLP. On December 13, 2016, the Court approved the *Ninth Interim Fee Application* for the Receiver and his counsel, covering the period from July 1, 2016 to September 30, 2016.[20] On December 14, 2016, the Receiver paid $24,565.00 to the Receiver and his firm and $48,101.92 to Dorsey & Whitney LLP.

---

[19] Docket No. 1230.

[20] Docket No. 1236.

For the current Reporting Period, the Receiver and his staff have spent a total of 119.3 hours on behalf of the Receivership Estate. Billable services provided by the Receiver during the Reporting Period total $17,022.50. Dorsey & Whitney LLP's total fees and expenses incurred during the Reporting Period are in the total amount of $39,350.83.[21]

## VII.

## NEXT STEPS

At this time, the Receiver anticipates addressing the following priorities in the coming months:

1.  <u>Litigation, Settlements, and Appeal</u>. The Receiver anticipates concluding all pending litigation matters discussed in Part V above. As discussed in Part III.A above, he will need to defend an appeal by two ABI holders who continue to assert that their ABIs are valid interests against Receivership property.

2.  <u>Collection of Judgments</u>. The Receiver anticipates continuing his efforts to collect on judgments that have been entered in favor of the Receivership Estate.

3.  <u>Property Sales</u>. The Receiver will continue his efforts to sell the remaining real estate held by the Receivership Estate.

---

[21] A summary of fees and expenses that have been incurred on behalf of the Receivership Estate by the Receiver and the Receiver's legal counsel in prior Reporting Periods is set forth in each of the earlier Status Reports and the interim Fee Applications.

## VIII.

## CONCLUSION

Great progress was made during the Reporting Period, particularly with regard to the approval of the Receiver's *Plan of Distribution*, the initial distribution made to claimants, and the Court's ruling invalidating the ABIs. The Receiver hopes the coming year will bring more property sales and that he will be able to continue to make progress in winding down the administration of the Receivership Estate.

DATED this 30th day of January, 2017.

*/s/ Wayne Klein*
WAYNE KLEIN, Receiver

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the above **EIGHTEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER** was filed with the Court on this 31st day of January, 2017, and served via ECF on all parties who have requested notice in this case. A copy was also served on Wayne Palmer by U.S. Mail, postage prepaid at:

Wayne Palmer
8816 South 2240 West
West Jordan, UT 84088

/s/ Candy Long