Peggy Hunt (Utah State Bar No. 6060)
John J. Wiest (Utah State Bar No. 15767)
**DORSEY & WHITNEY LLP**
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: hunt.peggy@dorsey.com
        wiest.john@dorsey.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>Defendants. | **NINETEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER**<br>*For the Quarter Ending March 31, 2017*<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of Utah, LC ("National Note"), as well as certain subsidiaries and entities affiliated with National Note and the assets of Wayne LaMar Palmer ("Palmer"), hereby submits this Nineteenth Status Report for the period January 1, 2017 through March 31, 2017 (the "Reporting Period").

# I.

## PROCEDURAL HISTORY

This action (the "Civil Case") was commenced by the United States Securities and Exchange Commission (the "SEC") on June 25, 2012, against Defendants Palmer and National Note by the filing of a Complaint in the United States District Court for the District of Utah (the "Court").[1] The Court held a trial on November 2, 2015 and on November 30, 2015 entered judgment against Palmer and National Note.[2]

On August 19, 2015, a grand jury indicted Palmer and his cousin, Julieann Palmer Martin. On February 5, 2017, both pleaded guilty. Palmer pleaded guilty to two felony counts: a scheme and artifice to defraud and money laundering. Ms. Martin pleaded guilty to one felony count of concealing fraud by another. They will be sentenced on September 11, 2017.

# II.

## REAL ESTATE TRANSACTIONS

Attached hereto as **Exhibit A** is a chart setting forth the status of all real properties in the Receivership Estate as of March 31, 2017. After closing on the three lots sold during the Reporting Period, five primary properties remain in the Receivership Estate: 41 lots located in the "Elkhorn Ridge" subdivision in Malad, Idaho; the "Deer Meadows" property located near Duchesne, Utah; 1 industrial lot located in Minnesota; the "Overland Trails" property located in Eagle Mountain, Utah; and the "Expressway Business Park" properties located in Spanish Fork, Utah. All of these

---

[1] Docket No. 1.

[2] Docket No. 1043.

properties are being marketed for sale, but each has unique challenges.  The Receiver is evaluating sale alternatives and potential abandonment of some of the properties.

     **A.**    **Real Property Sales Closed During the Reporting Period**. Three property sales closed during the Reporting Period.

         1.    <u>Elkhorn Lot #3</u>. On January 24, 2017, the Court approved the sale of this building lot for $22,000.00.[3] The sale closed on February 6, 2017 with net proceeds of $19,344.67 being paid to the Receivership Estate.

         2.    <u>Almond Heights Lots #21 and #22</u>. Based on engineering reports showing that one of these lots was unbuildable and the other lot would require extraordinary engineering work, the Court approved the sale of these two building lots for $7,700.00.[4] The sale closed on February January 19, 2017. The Receivership received $4,198.82 in net proceeds from the sale.

     **B.**    **Property Offers Subject to Court Approval**. No offers were accepted by the Receiver for other Receivership properties during the Reporting Period.

     **C.**    **Expressway Business Park**. On February 28, 2017, the Court entered an *Order* denying the Receiver's *Motion Requesting Authorization Regarding Method of Disposition of Expressway Business Park Land and Memorandum in Support*.[5] The Court directed the Receiver to find buyers willing to pay cash for the property and to perform additional investigation into possible means of making the property attractive to buyers.

---

[3] Docket No. 1261.

[4] Docket No. 1256.

[5] Docket Nos. 1131 and 1266.

## III.

## STATUS OF REAL ESTATE INTERESTS

      **A.**    **Assignments of Beneficial Interest ("ABIs")**. As noted in prior Status Reports, the status of all but three of the 349 ABIs issued by National Note to investors have been voluntarily released or resolved.  This Court has held that the remaining three ABIs are invalid [6] but the holders of those ABIs filed an appeal of the Court's Judgment on December 22, 2016 (the "ABI Appeal").[7] Mediation efforts by the Tenth Circuit mediator during the Reporting Period did not result in a settlement.  Thus, the ABI Appeal will continue.  The appellants' opening brief was filed just after the close of the Reporting Period.

      **B.**    **Deeds of Trust**. Of the thirteen properties on which deeds of trust had been recorded at the time of the Receiver's appointment, all deeds of trust have been satisfied or released except as to the two properties noted below.

      1.    <u>Overland Trails, Eagle Mountain, Utah</u>: There are six deeds of trust remaining and recorded against this property, claiming to secure a total of $252,136.91 in debt. The Receiver does not believe that all of these deeds of trust are valid, but he is attempting to sell the property before incurring expense to dispute the interests.

      2.    <u>Expressway Business Park, Spanish Fork, Utah</u>: There are three remaining deeds of trust recorded against this property, which are held by Westar Equities, Jeff Sessions, and Evolution Holdings. Westar Equities maintains that it is owed the principal amount of $9,634.30

---

[6] *Klein v. Adams*, Civil No. 2:14-CV00614, Docket No. 525 (Memorandum Decision entered Oct. 25, 2016); Docket No. 526 (Judgment entered Nov. 14, 2016).

[7] Case No. 16-4215 (10th Cir.).

plus accrued interest. The interests of Sessions and Evolution Holdings are in unspecified amounts, but the Receiver believes that the purported debts relate to tenant improvements that were promised by National Note but never completed. Because the Receiver believes that National Note holds a superior lien that was effective before the dates of the deeds of trust given to Sessions and Evolution Holdings, the Receiver intends to contest the Sessions and Evolution Holdings deeds of trust.

## IV.

## <u>LITIGATION/SETTLEMENTS</u>

The following events occurred during the Reporting Period with regard to litigation:

A.     <u>Turpin Settlement</u>. On January 19, 2017, the Court entered an *Order* approving a settlement agreement between the parties in the action styled as *Klein v. Michelle Turpin P.C.*[8] Pursuant to this agreement, $55,000.00 was paid to the Receivership Estate by or on behalf of the law firm and other parties, and the law firm's appeal of the judgment entered in favor of the Receivership Estate was dismissed.

B.     <u>Green Apple Litigation</u>. The Receiver filed a Motion seeking Court approval of a settlement with Green Apple Holding LLC relating to a tax sale on a property in Florida on which National Note held a mortgage. This Motion was denied by the Court,[9] and the Receiver is considering options related to this matter. Likely, a lawsuit will be required to resolve this matter.

C.     <u>Settlement Collections</u>. The vast majority of payments required under settlement

---

[8] Docket No. 1257.

[9] Docket No. 1257.

agreements with the Receiver have been paid. Seven settlement agreements remain with payments still owed. Payments are current on four of the seven agreements. The Receiver has made demand on the remaining three defendants, including, in one case, filing a confession of judgment obtained from the Defendant. The Receiver will pursue collection of defaulted settlement agreements.

## V.

## INITIAL DISTRIBUTION

A.   **Initial Distribution**. On November 8, 2016, the Court entered an *Order Granting Receiver's Motion for Approval of (1) Proposed Distribution Methodology and Plan of Distribution, and (2) Proposed Initial Distribution as Modified*,[10] approving the Receiver's proposed distribution methodology and *Plan of Distribution* and authorizing the Receiver to make an initial distribution.[11] On November 14, 2016, the Receiver distributed $4.49 million to 437 "Allowed Claimants."

B.   **Distribution Checks Have All Cleared**. As of March 31, 2017, all distribution payments related to the initial distribution have cleared.

## VI.

## FINANCIAL ANALYSIS

A.   **Receivership Financial Information**. The following financial information is provided for the Reporting Period:

1.   Bank Accounts. The Receiver maintains two bank accounts for the operation of the Receivership Estate: a general operating account (the "Operating Account") and

[10] Docket No. 1231.

[11] Docket No. 1231.

an account holding the net proceeds of real estate sales to which disputed interests have attached (the "Real Estate Account").[12] The balances in these accounts as of the close of the Reporting Period are as follows:

| Account | Account Balance |
|---|---|
| Operating Account | $955,096.80 |
| Real Estate Account | $961,122.89 |
| **TOTAL** | **$1,916,219.69** |

2.      Operating Account Deposits. The sources of funds deposited into the Operating Account during the Reporting Period are shown in the following table:

| Source | Amount In |
|---|---|
| Settlement agreement proceeds | $61,883.00 |
| Real estate sale net proceeds | $23,543.49 |
| Interest | $260.48 |
| **TOTAL** | **$85,636.95** |

3.      Operating Account Expenditures. The following table shows the categories of operating expenses that have been paid from the Operating Account during the Reporting Period:

| Type of Expense | Amount Out |
|---|---|
| Real estate notice publication | $422.02 |
| Asset searches for collection efforts | $4,575.00 |
| Bank fees, other operating | $104.22 |
| **TOTAL** | **$5,101.24** |

---

[12] Pursuant to the Court's *Order Approving the Receiver's Third Interim Fee Application for Receiver and Receiver's Professionals for Services Rendered from July 1, 2013 through December 31, 2013,* Docket No. 828, the Receiver has established a separate Savings Account tied to the Operating Account in which he is holding 20% of the professional fees incurred by him and his counsel related to that fee application. Money to open this Savings Account was transferred from the Operating Account. This Savings Account has a current balance of $122,925.04, and is in addition to the amounts reported below.

4.   Real Estate Account Deposits and Withdrawals. The only transactions in the Real Estate Account were deposits of accrued interest.

5.   SFAR. Attached as **Exhibit B** is a copy of the Standardized Fund Accounting Report for the Reporting Period

6.   Administrative Expenses. On March 2, 2017, the Court entered an Order approving the *Tenth Interim Fee Application* for the Receiver and his counsel, covering the period from October 1, 2016 to December 31, 2016.[13] On that date, the Receiver paid $16,325.00 to the Receiver and his firm and $39,268.83 to Dorsey & Whitney LLP.

For the current Reporting Period, the Receiver and his staff have spent a total of 71.8 hours on behalf of the Receivership Estate. Billable services provided by the Receiver during the Reporting Period total $13,505.00. Dorsey & Whitney LLP's total fees and expenses incurred during the Reporting Period are in the total amount of $30,609.69.[14]

## VII.

## NEXT STEPS

The Receiver anticipates addressing the following priorities in the coming months:

1.   Litigation, Settlements, and Appeal. At this time, with the exception of the ABI Appeal discussed above, most litigation has been finally adjudicated or otherwise resolved. As discussed in Parts IV.B and C above, the Receiver will likely be required to commence

---

[13] Docket No. 1269.

[14] A summary of fees and expenses that have been incurred on behalf of the Receivership Estate by the Receiver and the Receiver's legal counsel in prior Reporting Periods is set forth in each of the earlier Status Reports and the interim Fee Applications.

litigation against Green Apple Holding, LLC and against investors who have defaulted under settlement agreements that they entered into with the Receiver.

2. <u>Collection of Judgments</u>. The Receiver anticipates continuing his efforts to collect on judgments that have been entered in favor of the Receivership Estate.

3. <u>Property Sales</u>. The Receiver will continue his efforts to sell the remaining real estate held by the Receivership Estate.

## VIII.

## CONCLUSION

Administration of the Receivership Estate is entering a phase where progress may be slow. The Receiver anticipates that in the near future, the ABI Appeal will be fully briefed, but as noted above, the remaining real property will take additional time and collection efforts related to judgments and defaulted settlement agreements may be protracted and difficult. The Receiver will continue his efforts to close the Receivership Estate as efficiently and quickly as possible.

DATED this 27th day of April, 2017.

WAYNE KLEIN, Receiver

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the above **NINETEENTH STATUS REPORT OF R. WAYNE KLEIN, RECEIVER** was filed with the Court on this 27th day of April, 2017, and served via ECF on all parties who have requested notice in this case.

/s/ Candy Long