Peggy Hunt (Utah State Bar No. 6060)
John J. Wiest (Utah State Bar No. 15767)
**GREENBERG TRAURIG, LLP**
222 South Main Street, 5th Floor
Salt Lake City, UT 84101
Email: huntp@gtlaw.com
       wiestj@gtlaw.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>vs.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, an individual,<br><br>         Defendants. | RECEIVER'S MOTION SEEKING AUTHORIZATION TO MAKE THIRD AND FINAL DISTRIBUTION AND MEMORANDUM OF LAW IN SUPPORT<br><br>Civil No. 2:12-00591<br><br>The Honorable Bruce S. Jenkins |

    R. Wayne Klein, as receiver (the "Receiver") for National Note of Utah, LC and its affiliated entities ("National Note") and the assets of Defendant Wayne LaMar Palmer, by and through his counsel of record, hereby requests that the Court enter an Order authorizing a third and final distribution to holders of "Allowed Claims" against the Receivership Estate as a result of their National Note investments pursuant to the distribution methodology the Court approved earlier in this case and as described below. Specifically, the Receiver proposes making a final distribution to those holders of Allowed Claims eligible for a "rising tide" distribution as set forth in **Exhibit A** and as discussed in further detail below.

4845-0467-5685\1

The Receiver maintains that there is good cause to approve the proposed distribution, including approving the Receiver's budget of closure expenses described below and, therefore, respectfully requests that the Court grant this Motion. A proposed form of order is attached hereto as **Exhibit B**. In support hereof, the Receiver states as follows.

## I.

## BACKGROUND

*Allowed Claims*

1. At this time, a total of 442 Proofs of Claim submitted to the Receiver have been determined to be Allowed Claims and these Claims amount to over $47 million in loss of "Net Principal Investment", *i.e.,* the sum of all cash invested by the claimant with National Note, less all cash paid to the claimant by National Note prior to the commencement of the above-captioned case.

2. Some of these Allowed Claims were allowed pursuant to Orders entered after the Court authorized distributions discussed below (the "Claim Allowance Orders").[1] Unless otherwise ordered by the Court, in each case in which a Claim was determined to be an Allowed Claim after entry of an Order authorizing a distribution, the holder of the Allowed Claim received a distribution in the amount that it would have received if its Claim had been an

---

[1] For example, the Court has entered at least three Orders allowing claims after distributions commenced that were not initially deemed to be Allowed Claims: On January 23, 2017, the Court entered an *Order Granting Receiver's Motion for Approval of Settlement Agreement with John B. Winder* [Docket No. 1260] allowing Mr. Winder's claim pursuant to a settlement agreement; on May 14, 2018, the Court entered an *Order Granting Receiver's Motion Seeking Allowance of Previously Disputed Claims and Authorization to Release Funds* [Docket No. 1376], allowing three Proofs of Claim that had previously been disputed; and on January 7, 2019, the Court entered an *Order* [Docket No. 1435] allowing a late Proof of Claim submitted by Mark Mathison.

Allowed Claim prior to the authorized distribution, and the Allowed Claim was included in determining eligibility for later distributions.

*The Initial Order Approving Distribution Methodology and Initial Distribution*

3. On November 8, 2016, the Court entered an *Order Granting Receiver's Motion for Approval of (1) Proposed Distribution Methodology and Plan of Distribution, and (2) Proposed Initial Distribution as Modified* (the "Initial Order")[2] which, among other things, approved the Receiver's proposed methodology for distributing funds of the Receivership Estate to holders of Allowed Claims (the "Approved Methodology"), and authorized the Receiver to make an initial distribution in the total amount of approximately $4.5 million to holders of Allowed Claims, plus an additional $26,507.28 on account of settlements of objections and late-filed Proofs of Claim.

4. Pursuant to the Initial Order, on November 10, 2016, the Receiver made the initial distribution, distributing (a) approximately $1.5 million to all holders of Allowed Claims on a *pro rata* basis as a one-time payment, and (b) approximately $3 million to 214 holders of Allowed Claims eligible for a distribution under a "rising tide" methodology. Those eligible for the rising tide distribution were brought to a minimum recovery of 20.05% of their Net Principal Investment. Holders of Allowed Claims who received more than 20.05% of their Net Principal Investment prior to the commencement of this case or as a result of the one-time *pro rata* distribution were not eligible for a rising tide distribution as part of the initial distribution.

5. Pursuant to the Initial Order and the Claim Allowance Orders, at least five more National Note investors whose claims were ultimately determined to be Allowed Claims later received distributions for which they were eligible under the Approved Methodology.

---

[2] Docket No. 1231.

6. After some follow up by the Receiver, all checks issued by the Receiver pursuant to the initial distribution were cashed by those who received them.

<em>The Second Distribution Order</em>

7. On June 22, 2018, the Court entered an *Order Granting Receiver's Amended Motion Seeking Authorization to Make Second Distribution* (the "Second Distribution Order"),[3] authorizing the Receiver to make a second distribution in the amount of $2,005,394.41 to holders of Allowed Claims according to the Approved Methodology – which provided for a distribution to only those holders of Allowed Claims eligible for a distribution under the rising tide methodology.

8. Pursuant to the Second Distribution Order, on June 29, 2018, the Receiver made a second distribution, distributing $2,005,394.41 million to 228 holders of Allowed Claims eligible for a distribution under the rising tide methodology.

9. The second distribution brought all National Note investors who lost money in the scheme to a minimum recovery of 27.59% of their Net Principal Investment. Holders of Allowed Claims who received more than 27.59% of their Net Principal Investment prior to the commencement of this case or because of amounts received as part of the initial distribution were not entitled to a rising tide distribution as part of the second distribution.

10. After some follow up by the Receiver, all checks issued by the Receiver pursuant to the second distribution were cashed by those who received them.

---

[3] Docket No. 1400.

*Proposed Third and Final Distribution and Closure Budget*

11.     As set forth in his recently-filed *Status Report*,[4] the Receiver has now liquidated all assets of the Receivership Estate and is prepared to make a final distribution to those holders of Allowed Claims eligible for a distribution under the Approved Methodology and request termination of the Receivership.

12.     At a recent hearing, the Receiver requested direction from the Court on issues related to closing the Receivership Estate. The Court requested that the Receiver prepare a motion seeking authorization to make a final distribution, and then after that distribution had been completed, file a motion to terminate the Receivership.

13.     As of April 30, 2020, the total liquidated assets of the Receivership Estate total $1,274,047.43.

14.     Considering expenses the Receiver, in an exercise of his reasonable business judgment, deems necessary to bring this case to a close, the Receiver submits that the third and final distribution to eligible Allowed Claimants should be in the total amount of $1,238,500. This amount is calculated based on the following "Closure Budget":

| Calculation of Funds Available for Final Distribution | |
| --- | --- |
| **Amount** | **Explanation** |
| $1,274,047.43 | Receivership funds as of April 30, 2020 |
| -$7,897.50 | Receiver fees - January to April 2020 |
| -$1,353.00 | Counsel fees - January to April 2020 |
| -$4,368.00 | Estimated future expenses for tax returns, storage costs, bank fees, document destruction, postage |
| -$3,875.00 | Estimated future billable time for Receiver and staff, including to conduct the following tasks:<br>• Calculating amount of third distribution, prepare exhibits, assist in preparing motion for third distribution;<br>• Participating in hearing on approval of distribution;<br>• Preparing and mailing distribution checks; |

---

[4] Docket No. 1471.

4845-0467-5685\1

|  |  |
|---:|---|
|  | • Tracking down claimants who have moved, reissuing uncashed checks, finding beneficiaries of deceased claimants, and tracking progress of cashed checks;<br>• Preparing two quarterly status reports and SFAR reports;<br>• Working with the Department of Justice to reconcile how funds from the third distribution should be credited towards Wayne Palmer's criminal restitution;<br>• Overseeing preparation of tax returns<br>• Assisting in preparing final motion to terminate Receivership Estate and court hearing to approve termination;<br>• Overseeing destruction of storage unit documents, computers, and hard drives. |
| -$18,000.00 | Estimated future billable time for counsel, including to conduct the following tasks:<br>• Preparing motion for approval of third distribution, review and comment on exhibits, consult with Receiver on methodology and calculations;<br>• Filing motions to submit personal identification information under seal;<br>• Conferring with SEC counsel regarding distribution issues;<br>• Preparing for and presenting at hearing on approval of distribution motion;<br>• Preparing final motion reporting on results of final distribution and requesting termination of Receivership Estate;<br>• Preparing for and participating in hearing on termination of receivership estate;<br>• Preparing final order of termination after hearing, and related follow up;<br>• Responding to investor calls on distribution/termination;<br>• Reviewing, commenting on, and filing status reports;<br>• Dealing with issues related to new claims or disputes with distributions;<br>• Providing miscellaneous legal advice on final issues with closing the case; and<br>• Preparing final fee application, conferring with SEC, appearing at hearing (time for fee application not billed). |
| -$53.80 | Contingency reserve |
| **$1,238,500.00** | **Amount Available for Final Distribution** |

15. The fees and expenses set forth in the proposed Closure Budget have been conservatively calculated to take into consideration the services and expenses that the Receiver reasonably anticipates are necessary to close the Receivership.

16. To the extent there are any amounts remaining in the Closure Budget after the Receivership Estate has been fully administered and terminated, the Receiver proposes to pay any remaining amounts to the U.S. Department of Justice for distribution to victims of National Note in connection with the criminal restitution efforts of the Department of Justice, which will continue after the Receivership Estate has terminated. The Receiver intends to include this proposal in his motion to close the case, which will be filed after the proposed third distribution has been completed.

17. If this Motion is granted, the third and final distribution will bring all National Note investors who lost money in the scheme to a recovery of 31.35% of their Net Principal Investment. Holders of Allowed Claims who received more than 31.25% of their Net Principal Investment prior to the commencement of this case or because of amounts received as part of earlier distributions will not be eligible for a rising tide distribution as part of the proposed final distribution.

18. The Receiver calculates that a total of 239 holders of Allowed Claims are eligible for a rising tide distribution as part of this proposed final distribution, allowing for eleven additional holders of Allowed Claims to receive funds from the Receivership Estate than in the second distribution.

19. Attached hereto as **Exhibit A** is a chart identifying, among other things, the Allowed Claims eligible for a rising tide distribution as part of the proposed third and final distribution.

4845-0467-5685\1

| | | |
|---|---|---|
| Column A | | Proof of Claim number |
| Column B | | Total amount claimant paid to National Note |
| Column C | | Total amount National Note paid to claimant before Receiver's appointment |
| Column D | | The net amount of Columns B and C, which is the Net Principal Investment, or the amount of the claimholder's Allowed Claim |
| Column E | | The Pre-Receivership Percentage Return[5] of the Net Principal Investment on which rising tide distributions are based |
| Column F | | The one-time *pro rata* distribution of $1.5 million plus amounts approved by the Court on account of corrections, late-filed Proofs of Claim and resolution of objections made as part of the initial distribution to every holder of an Allowed Claims |
| Column G | | Total distributions by National Note and the Receiver after the *pro rata* distribution as a result of adding Columns C and F |
| Column H | | The revised percentage return of Net Principal Investment based the *pro rata* distribution |
| Column I | | The rising tide distribution, if any, allowed as part of the initial distribution |
| Column J | | Total distributions by National Note and the Receiver after the initial distribution as a result of adding Columns G and I |
| Column K | | The revised percentage return of Net Principal Investment based on the initial distribution |
| Column L | | The second rising tide distribution to those holders of Allowed Claims whose percentage return of Net Principal Investment after the initial distribution as set forth in Column K was less than 27.57% |
| Column M | | Total distributions by National Note and the Receiver after the second distribution as a result of adding Columns J and L |
| Column N | | The revised percentage return of Net Principal Investment after the second distribution |

---

[5] This is the percentage return that was paid on the claimant's Net Principal Investment prior to the commencement of this case.

4845-0467-5685\1

| | |
|---|---|
| Column O | The proposed third rising tide distribution to those holders of Allowed Claims whose percentage return of Net Principal Investment after the distribution as set forth in Column N is less than 31.35% |
| Column P | Total distributions by National Note and the Receiver after the third proposed distribution as a result of adding Columns M and O |
| Column Q | The final percentage return of Net Principal Investment after the proposed third distribution |

## II.

## REQUESTED RELIEF

20.     The Receiver requests entry of an Order granting this Motion and authorizing him to make a third and final distribution in the total amount of $1,238,500.00 to those holders of Allowed Claims eligible for a distribution under the rising tide methodology as set forth on Exhibit A. If approved, after this distribution is made, the Receiver will file a motion to disburse any excess funds that remain from the Closure Budget or otherwise to the Department of Justice as set forth above, and request termination of the Receivership Estate.

## III.

## MEMORANDUM OF LAW

21.     A key objective of receiverships is to distribute recovered funds to defrauded investors as fairly and expeditiously as possible.[6]

---

[6] *VesCor Capital Corp. v. Valle Verde L.P., et al.*, No. 2:07-CV-0363 (D. Utah) (Benson, J.) (Memorandum Decision and Order to Transfer Funds from Interpleader and to Release Funds for Use by the Receivership in Valle Verde, Jan. 29, 2009).

22. It is well established that the Court has broad discretion in fashioning relief in equity receiverships,[7] including authorizing distributions pursuant to a plan of distribution that is "fair and reasonable."[8]

23. Here, after notice to all parties in interest in this case and opportunity to be heard, the Court entered the Initial Order which sets forth the Approved Methodology for making distributions of the Receivership Estate in this case. In so doing, the Court determined that the Approved Methodology was fair and reasonable.[9]

24. The Receiver has sufficient funds to make a third and final distribution and he is requesting authority to do so in accordance with the Approved Methodology.

25. The Receiver believes that this proposed third distribution, which is in accordance with the Approved Methodology in the Initial Order, is fair and reasonable and should be approved. The Receiver will post a copy of this Motion on the Receivership website so claimants who visit the website will be apprised of the Motion and the Receiver's recommendation.

IV.

**CONCLUSION**

For the reasons stated herein, the Receiver requests that the Court enter an Order authorizing a third distribution in accordance with the Approved Methodology on a rising tide basis to the holders of Allowed Claims as set forth in **Exhibit A**.

---

[7] *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 328 (5th Cir. 2001); *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 91 (2d Cir. 2002); *SEC v. Hardy*, 803 F.2d 1034, 1037-39 (9th Cir. 1986).

[8] *SEC v. Wealth Mgmt., LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010). *Accord, SEC v. 4NExchange, et al.*, No. 2:02-CV-0431 (D. Utah) (Kimball, J.) (Order Approving First Plan of Partial Distribution, Feb. 16, 2005).

[9] *See* Initial Order.

4845-0467-5685\1

DATED this 19th day of May, 2020.

                                                      **GREENBERG TRAURIG, LLP**

                                                      */s/ Peggy Hunt*
                                                      Peggy Hunt
                                                      John Wiest
                                                      *Attorneys for Receiver*

4845-0467-5685\1

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that the above **RECEIVER'S MOTION SEEKING AUTHORIZATION TO MAKE THIRD AND FINAL DISTRIBUTION AND MEMORANDUM OF LAW IN SUPPORT** was filed with the Court on this 19th day of May, 2020, and served via ECF on all parties who have requested notice in this case.

*/s/ John J. Wiest*

4845-0467-5685\1