Peggy Hunt (Utah State Bar No. 6060)
GREENBERG TRAURIG LLP
222 South Main Street, 5th Floor
Salt Lake City, UT 84101
Telephone: (801) 478-6900
huntp@gtlaw.com

*Attorneys for Court-Appointed Receiver R. Wayne Klein*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>NATIONAL NOTE OF UTAH, LC, a Utah Limited Liability Company and WAYNE LaMAR PALMER, and individual,<br><br>Defendants. | **INTERIM STATUS REPORT OF R. WAYNE KLEIN, RECEIVER RELATING TO MOTION TO CLOSE RECEIVERSHIP ESTATE**<br><br>*For the Period Ending November 30, 2020*<br><br>2:12-cv-00591 BSJ<br><br>The Honorable Bruce S. Jenkins |

R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of National Note of Utah, LC ("National Note"), as well as certain subsidiaries and entities affiliated with National Note and the assets of Wayne LaMar Palmer ("Palmer"), hereby submits this *Interim Status Report* in advance of the hearing set for December 14, 2020 on the *Receiver's Motion (1) to Approve Final Accounting, Final Fee Applications and Closing Procedures and (2) to Terminate the Receivership and Discharge the Receiver, and Memorandum in Support* ("Termination Motion").[1]

---

[1] Docket No. 1481, filed September 21, 2020.

I.

**RECEIVER'S MOTION TO TERMINATE RECEIVERSHIP**

On September 21, 2020, the Receiver filed the Termination Motion, requesting termination of the receivership and discharge of the Receiver on the basis that the Receivership Estate was fully administered. At an October 14, 2020 hearing on the Termination Motion, the Receiver notified the Court of two recent developments relating to the Receivership Estate. As a result of these developments, the Court continued the hearing on the Termination Motion to December 14, 2020. Since that time, the Receiver has continued to administer the Receivership Estate by attending to the most recent issues as discussed below.

II.

**PALMER'S PERSONAL INJURY CLAIM**

In October 2020, the Receiver discovered that Palmer asserted a personal injury claim against the driver of an automobile that collided with Palmer's vehicle on November 17, 2018. The claim is likely to settle for an amount between $200,000 and $250,000. The Receiver informed the Assistant United States Attorney in Palmer's criminal case who is attending to collecting and distributing the $52.9 million that Palmer was ordered to pay in criminal restitution about Palmer's insurance claim and the potential settlement.

On November 12, 2020, the United States Attorney filed a *Motion to Amend the Manner and Schedule of Payment of Restitution*.[2] Judge Waddoups entered an *Order Amending the Manner and Schedule of Payment of Restitution* on November 30, 2020, requiring Palmer to deliver to the Clerk of the Court all net proceeds from any settlement or any damages awarded to him, after deduction for attorneys' fees, medical bills still owing, and insurance subrogation

---

[2] *United States v. Wayne LaMar Palmer*, 2:15-CR-00469 (D. Utah), Docket No. 138.

claims.[3] As a result of this Order, any funds Palmer may become entitled to as a result of the insurance claim will be paid to victims of the National Note scheme and, therefore, the Receiver sees no reason for any further involvement in this matter that would delay termination of the Receivership Estate.

### III.

### UINTAH COUNTY CRIMINAL CASE AGAINST REED LARSEN

As the Receiver informed the Court at the hearing on October 14, 2020, Reed Larsen, a person involved in the Old Glory Mint, is now the subject of a criminal proceeding related to that business.[4] The Receiver testified at the preliminary hearing in that matter on October 8, 2020, and provided documents and relevant information to the Uintah County Prosecutor's Office. The docket in that case indicates that Larsen was bound over for trial and a scheduling conference is set for January 19, 2021.

On December 2, 2020, the Prosecutor's Office informed the Receiver that a tentative disposition of the criminal case has been achieved. Larsen has agreed to pay restitution to the Vernal resident who paid money to Old Glory Mint but never received the promised precious metals. If that restitution is paid, the criminal charges will be dismissed.

The Receiver submits that there is no need for the Receivership Estate to continue to exist pending the final disposition of the criminal case. If the restitution is not paid, the Receiver is prepared to serve as a witness if necessary, and he agrees to amend the relief requested in the Termination Motion to retain all records relating to the Receivership Estate until three months after the conclusion of the criminal case against Larsen.

---

[3] *Id.* Docket No. 139.

[4] *State v. Larsen*, Case No. 151800507, Eighth District Court, Uintah County, Utah.

## IV.

## OTHER MATTERS

### A. Document Storage and Destruction

The Receiver has paid for an additional seven months in rent for the storage unit where the records of the Receivership Estate are held. As noted above, the Receiver agrees to amend the Termination Motion and will not destroy any records until three months after the conclusion of the criminal case against Larsen.

### B. Taxes

The Receiver filed 2019 federal and state tax returns for the Receivership Estate on October 15, 2020. The Receiver was required to pay $4,000 in taxes to the State of Utah resulting from the sale of the Overland Trails property in January 2019. The sale of this property generated significant net profit and under Utah tax law applicable at that time, National Note's net operating loss could only offset 80% of the income. However, in a 2020 special session, the Utah legislature enacted legislation to conform with the federal CARES Act which, in relevant part, allows full utilization of net operating loss carryovers. On November 16, 2020, the Receiver filed an amended tax return with the state and expects to obtain a refund of $3,900 (exclusive of the mandatory $100 tax filing fee). If the Court approves termination of the Receivership Estate in 2020, the Receivership will only have to file one more return (for 2020) and the Receiver expects that no taxes will be due. The Receiver believes that filing these final tax returns are within the wind-up powers he has requested in the Termination Motion.

### C. Release of Liens

The Receiver signed documents in August 2020 releasing a 1996 lien recorded by National Note against a residential property, even though it never advanced any money to the property owner. This situation has arisen several times during the Receiver's administration of

4

the Receivership Estate, and it is possible it will occur again. If so, the Receiver believes that he will have the ability to release bogus liens under the receivership wind-up powers he has requested in the Termination Motion.

### D. Late Claims

On November 12, 2020, the Receiver was contacted by a victim of National Note who received notice of the claims bar date but failed to submit a Proof of Claim and was inquiring about the possibility of recovery. The Receiver explained that all available funds had been distributed, but he prepared and sent a letter to the victim designed to help the victim claim the investment as a loss on her tax returns. This situation has happened several times in the past and may recur in the future. These inquiries and acts should not delay the termination of the Receivership Estate as the Receiver believes providing such information is consistent with the wind-up powers the Receiver has requested in the Termination Motion.

## V.

## FINANCIAL REPORT

As of August 30, 2020, the Receivership Estate's two bank accounts had a total balance of $28,956.69. With the expected tax refund of $3,900.00 and the advance payment of $828.00 in storage unit rent, there will be approximately $32,000.00 available to wind down the Receivership Estate. This amount is enough to pay fees due to counsel as requested in the Termination Motion, out-of-pocket expenses of closing down the Receivership Estate, and a portion of the Receiver's fees as requested in the Termination Motion.

## V.

## CONCLUSION

For the reasons set forth in the Termination Motion and herein, the Receiver respectfully requests that the Termination Motion be granted, with the one amendment related to document retention and destruction outlined above. There does not appear to be any reason to keep the Receivership Estate open and, in fact, it is likely beneficial to close the Estate before year-end to avoid the need for further tax filings and the possibility of changes in the tax laws resulting in future tax liabilities.

DATED this 2nd day of December 2020.

*Wayne Klein*
WAYNE KLEIN, Receiver

## **CERTIFICATE OF SERVICE**

    IT IS HEREBY CERTIFIED that service of the above **INTERIM STATUS REPORT OF R. WAYNE KLEIN, RECEIVER RELATING TO MOTION TO CLOSE RECEIVERSHIP ESTATE** was filed with the Court on this 3rd day of December 2020, and served via ECF on all parties who have requested notice in this case.

                                            /s/ Candy Long